633 A.2d 418

**Ebube E. ODUNUKWE**

v.

**Stella O. ODUNUKWE.**

**No. 50, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 1, 1993.

Susan H. Terlep (Azrael, Gann & Franz, on the brief), Baltimore, for appellant.

William M. Ferris (Krause & Ferris, on the brief), Annapolis, for appellee.

Argued before BLOOM, FISCHER and MOTZ, JJ.

FISCHER, Judge.

Aggrieved by the outcome of his divorce proceeding, Ebube E. Odunukwe appeals the decision of the Circuit Court for Anne Arundel County. Dr. Odunukwe presents the following questions for our review:

1. Did the circuit court err in awarding Mrs. Odunukwe a monetary award of $60,000 and entering a judgment against Dr. Odunukwe in that amount when the parties stipulated that the marital equity in the family home was $18,400, which the lower court divided equally among the parties, and the evidence revealed that the remaining marital property was valued at a minimum of $6,302.76 but no more than $42,302.76?

2. Did the circuit court err in ordering Dr. Odunukwe to spend approximately eighty-one percent of his net monthly income for alimony, child support, health insurance and mortgage payment and other costs of the family home during the three year possession and use period?

3. Did the circuit court err in ordering Dr. Odunukwe to pay rehabilitative alimony for a period of twelve years where the evidence established that Mrs. Odunukwe would need only three to five years to obtain her doctoral degree in her career field?

4. Did the circuit court err in ordering Dr. Odunukwe to contribute to Mrs. Odunukwe's attorney's fees, deposition expenses and court costs where there was insufficient evidence to establish that Mrs. Odunukwe had substantial justification for withholding visitation, retaining seven attorneys or that Mrs. Odunukwe lacked financial resources to pay her fees?

5. Did the circuit court err in ordering a visitation schedule that is contrary to the visitation schedule agreed upon by the parties and placed on the record before the lower court?

Ebube E. Odunukwe and Stella O. Odunukwe had been married for twelve years when their divorce proceeding commenced on July 31, 1992. For more than two years prior to the trial, the parties lived in separate residences. Mrs. Odunukwe remained in the family's Glen Burnie home, while Dr. Odunukwe rented an apartment in Ellicott City. The parties' three children, Chiwuze, born August 29, 1982, Ubachukwu,

born November 23, 1985, and Azubuike, born March 1, 1989, occupied the family home along with Mrs. Odunukwe.

Dr. and Mrs. Odunukwe were born in the same area of Nigeria but did not meet until 1978 while they were both studying at the University of Illinois in Chicago. The couple was married in a civil ceremony on March 10, 1979. Subsequently, they participated in a cultural ceremony in accordance with their traditions.

In the fall of 1979, Dr. Odunukwe began medical school at Rush Medical College in Chicago, and the couple resided in the married students' dormitory. Mrs. Odunukwe was then a graduate student at the University of Illinois School of Public Health. Mrs. Odunukwe received her master's degree in 1982, and Dr. Odunukwe graduated from medical school the following year. During these years, the couple's income was minimal as they financed their education.

In June, 1983, after Dr. Odunukwe graduated from medical school, he began an internship at Illinois Masonic Hospital. His annual salary was $18,000. That same year, Mrs. Odunukwe worked full-time, and the couple's joint income for 1983 totalled $20,792.

Unfortunately, 1983 also signalled the start of marital problems for the parties. Mrs. Odunukwe accused her husband of infidelity and physical abuse—charges that Dr. Odunukwe denies. Dr. Odunukwe attributes the parties' estrangement partially to a pattern of what he labels "false accusations of infidelity." In addition, Dr. Odunukwe points to self-esteem problems that he claims Mrs. Odunukwe began experiencing.

The parties moved to New York City in June, 1984 when Dr. Odunukwe began a three-year residency at Harlem Hospital. During this time, the parties' second child was born. Dr. Odunukwe supplemented his residency salary by working at another hospital on evenings and weekends. Mrs. Odunukwe, meanwhile, obtained a position as a dietician at Jacobi Hospital. Despite these demanding schedules, Dr. Odunukwe felt that he and his wife made time to enjoy their children. To the

contrary, Mrs. Odunukwe felt that her husband had no time for the family.

By the time that Dr. Odunukwe completed his residency in 1988, the parties, who were then expecting their third child, had decided not to raise their children in New York City. The family then relocated to Glen Burnie, because Dr. Odunukwe knew a doctor there who was selling his medical practice. Both parties liked the location and thought that it would be a better place for their children.

The parties purchased a two bedroom condominium in Glen Burnie,[1] but Dr. Odunukwe later learned that the medical practice he had intended to join was not "a good deal." Thereafter, Dr. Odunukwe became associated with a three-office optical company in Baltimore. Following the March, 1989 birth of the parties' third son, Mrs. Odunukwe worked in temporary and part-time positions. She then obtained employment as a dietician at Deaton Hospital in South Baltimore, a position she currently holds.

In March, 1990, Dr. Odunukwe opened his sole ophthalmology practice in Glen Burnie. He presently maintains this practice. With the opening of the new practice, the couple's marital problems were exacerbated. An argument erupted on April 12, 1990 when Dr. Odunukwe sought to take the children to McDonald's for lunch. Mrs. Odunukwe alleged that Dr. Odunukwe struck her. Dr. Odunukwe responded that the incident was only a verbal argument precipitated by Mrs. Odunukwe's refusal to allow the children to leave the house without her. Ultimately, Dr. Odunukwe agreed to vacate the family home and to establish his residence elsewhere.

During the separation, Mrs. Odunukwe would not allow Dr. Odunukwe to have the children visit with him, because Mrs. Odunukwe feared that Dr. Odunukwe would take the children to Nigeria and would not return. After a *pendente lite* hearing, the Circuit Court for Anne Arundel County issued, on

---

1. This condominium is the family home where Mrs. Odunukwe and the children presently reside.

September 30, 1992, a schedule of unsupervised visitation for Dr. Odunukwe. In November, 1991, Mrs. Odunukwe again denied Dr. Odunukwe visitation with the children. Despite Dr. Odunukwe's December, 1991 motion to enforce visitation rights and his request for emergency relief, a hearing was not scheduled on the matter until March, 1992. Just prior to the hearing, a consent order "reinstating" visitation was filed, and Dr. Odunukwe's visitation with the children resumed.

Immediately after the parties separated, Dr. Odunukwe continued to pay the mortgage on the parties' home, the condominium fees and other costs associated with the condominium, real estate taxes, and the children's day care costs. Dr. Odunukwe stopped making the day care payment, however, when he learned that Mrs. Odunukwe was no longer taking the children to the babysitter and that Mrs. Odunukwe's mother was, instead, watching the children. At one point, Dr. Odunukwe learned that, although he had been sending money to Mrs. Odunukwe for the mortgage payments, Mrs. Odunukwe had not been making the mortgage payments. Dr. Odunukwe then began paying the mortgage company directly and deducting this amount from his payment to Mrs. Odunukwe.

After conducting a hearing on the parties' claim and counterclaim for absolute divorce, the court issued a written order dated September 1, 1992. In its order, the court granted an absolute divorce to Mrs. Odunukwe on the grounds of adultery and abandonment. The court awarded joint legal custody of the children to the parties. Physical custody of the children was, however, granted to Mrs. Odunukwe with a liberal visitation schedule provided for Dr. Odunukwe. With regard to the issue of child support, the court ordered Dr. Odunukwe to pay $1,400 per month. The court also ordered Dr. Odunukwe to provide medical insurance for the children.[2]

---

2. By subsequent order, the court stated that Dr. Odunukwe need not obtain a separate health insurance policy. Since the children were listed on Mrs. Odunukwe's medical coverage, the court ruled that Dr.

Concerning alimony, the court awarded Mrs. Odunukwe monthly payments of $400 for a period of twelve years. Mrs. Odunukwe was also awarded use and possession of the family home for three years. During those three years, Dr. Odunukwe was to pay the mortgage expenses and other costs associated with the condominium. After the expiration of the three years, the home shall be sold, and the parties shall receive equal shares of the proceeds. Mrs. Odunukwe also received a three year period of use and possession with regard to the parties' 1986 Nissan Sentra. The court further noted that the parties had previously divided all personal property as well as personal debts and obligations.

In calculating a monetary award, the court listed the following items of marital property along with the noted values and liens:

[Family residence]

Value: $79,400

Mortgage: $62,471.97

1986 Nissan Sentra

Value: $1,775

Lien: $1,189.54

1990 Mitsubishi Montero

Value: $11,000

Lien: $14,433

[awarded to the husband]

[Dr. Odunukwe's medical practice]

Value: $36,000

Debt: Not available

Household Furnishing

(Resolved by the parties—each to keep what is in their possession.)

Life Insurance

---

Odunukwe could satisfy his obligation by paying the health insurance premiums charged by Mrs. Odunukwe's employer.

Cash Value: $2,900

Debt: $2,864.50

Cash Deposits in Bank (Wife)

$880.48—6/29/92

(To remain with Wife)

Bank Deposit (Husband)

$1,489.13—5/25/93

(To remain with Husband)

Retirement Plan/IRA

Value: $1,057.19

(To remain with wife)

Retirement Plan/IRA

Value: $2,255

(To remain with husband)

Personal Property

Stereo, etc.

Value: $2,500

(Resolved by parties)

The court also ruled that realty located in Nigeria was marital property, but the court stated that the value of the property was unknown. The court concluded this portion of its order by granting a monetary award of $60,000 to Mrs. Odunukwe. The monetary award was reduced to a judgment to be paid by Dr. Odunukwe at the rate of $5,000 per year for twelve years.

Last, the court ordered Dr. Odunukwe to pay $5,000 toward the cost of Mrs. Odunukwe's attorneys' fees. This amount was also reduced to a judgment against Dr. Odunukwe.

## I. Monetary Award

Dr. Odunukwe's first assignment of error concerns the $60,000 monetary award granted to Mrs. Odunukwe. Dr. Odunukwe contends that this amount exceeds the total value of the marital property. Our calculations indicate that the $60,000 monetary award is greater than the value of the marital property. As we stated in *Ward v. Ward,* 52 Md.App.

336, 343, 449 A.2d 443 (1982), "Since the function of a monetary award is to adjust the parties' equities in the marital property, it is elemental that a court cannot make an award whose amount exceeds the total value of the marital property." And of necessity, if the spouse to whom the court intends to grant a monetary award already owns (and thus will retain) any marital property, the award cannot exceed the value of the marital property owned by the other spouse. We must, therefore, vacate the monetary award and remand this issue to the circuit court for reconsideration.

■ To assist the court on remand, we offer the following guidance. While it may be that, in order to adjust the equities, Mrs. Odunukwe is deserving of a monetary award, we caution the court to examine whether an equitable result is reached. if the **entire** value of the marital property is granted to Mrs. Odunukwe. Also with regard to the marital property, we remind the court that a party asserting a marital interest bears the burden of proving that the property is in fact marital property, i.e., property acquired by either or both spouses during marriage. The same party also bears the burden of proving the value of the alleged marital property. *Melrod v. Melrod,* 83 Md.App. 180, 194, 574 A.2d 1, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990). As Mrs. Odunukwe failed to meet her burden with respect to either the ownership or the value of the realty located in Nigeria, the court should not in any way consider this property when resolving the financial issues in the case, unless upon rehearing appellee is able to offer satisfactory evidence of the status and value of the subject property.

■ Dr. Odunukwe also challenges the monetary award by claiming that the award is based upon an erroneous valuation of his medical practice. Dr. Odunukwe takes issue with the $36,000 valuation assigned by Mrs. Odunukwe's expert. The court received, as a joint exhibit, evidence from accountants retained by each of the parties. Therefore, there was no question as to admissibility. After considering the evidence, the court, acting within the bounds of its discretion, accepted

the evidence offered by appellee as the more persuasive. *See Bastian v. Laffin,* 54 Md.App. 703, 460 A.2d 623 (1983).

Also with regard to the monetary award, Dr. Odunukwe questions the fact that the court entered judgment against Dr. Odunukwe for the entire $60,000 amount. Section 8–205(c) of the Family Law Article authorizes the court to "reduce to a judgment any monetary award . . . to the extent that any part of the award is due and owing." As Dr. Odunukwe notes, the monetary award was to have been paid at the rate of $5,000 per year over a twelve year period.

Although this issue is moot in light of our decision to vacate the monetary award, we nevertheless comment to aid the court on remand. In *McClayton v. McClayton,* 68 Md.App. 615, 622, 515 A.2d 231 (1986), Judge Bloom wrote on behalf of this court:

A monetary award, unlike a judgment at law, is not based upon any antecedent debt or obligation, but is a present adjustment of equities existing at the time of the award. In granting such an award, the chancellor's discretion extends not only to the amount of the award but also the method of payment. Md.Fam.Law Code Ann., § 8–205(a) (1984 & 1985 Supp.). The entire award can be made immediately due and payable or all or part of it can be made payable in the future. Subsection (b) of § 8–205 authorizes the court to reduce to a judgment any monetary award granted under § 8–205(a), but only 'to the extent that any part of the award is due and owing.'

Judge Bloom applied these principles to the case then before us and held:

In the case *sub judice,* the 3 December 1985 order attempted to 'reduce to judgment' its [monetary] award of $200,000 while at the same time specifying that those monies were to be payable in future installments. The court, however, had no statutory authority to reduce such a monetary award to a separate judgment.

*McClayton,* 68 Md.App. at 624, 515 A.2d 231.

To the extent that the court entered judgment on any amount of the monetary award that was due and payable to

Mrs. Odunukwe, such judgment would have been proper. To the extent that the court entered judgment on future installments, which, of course, are not currently due and owing, the entry of judgment was improper.

## II. Percentage of Dr. Odunukwe's Income to be Paid for Family Expenses

Dr. Odunukwe's next assignment of error concerns his obligation to make payments on behalf of Mrs. Odunukwe and the children during the three year use and possession order. Dr. Odunukwe contends that, for the three year period, he was ordered to pay $2,845 per month—a sum that he argues is excessive, because it amounts to eighty-one percent of his net monthly income or fifty-four percent of his gross monthly income.

During the hearing, the parties stipulated to Dr. Odunukwe's gross monthly income as $5,233 and to Mrs. Odunukwe's gross monthly income as $2,098. At the close of the proceeding, the court ordered Dr. Odunukwe to pay child support of $1,400 per month. The court also ordered Dr. Odunukwe to pay alimony of $400 per month, as well as the expenses of maintaining the family home (Dr. Odunukwe lists these costs as $770 per month), and health insurance costs for the children (according to Dr. Odunukwe, these costs amounted to $275 per month). The court modified its order, however, to allow Dr. Odunukwe to pay the premiums necessary to maintain the children on Mrs. Odunukwe's health policy ($83 per month) rather than purchase a separate policy. As a result of this modification, Dr. Odunukwe claims that the monthly amount he must pay was reduced from eighty-one percent of his net income to seventy-five percent of his net income. Despite the reduction, Dr. Odunukwe argues that these court-ordered expenses "grossly exceed" his financial ability.

The parties inform us that the amount of child support comports with the statutory guidelines. Family Law Article, § 12–204. According to the statute, however, "The basic child

support obligation shall be divided between the parents in proportion to their adjusted actual income." Family Law Article, § 12–204(a)(1). Moreover, "If the court awards alimony or maintenance, the amount of alimony or maintenance awarded shall be considered actual income for the recipient of the alimony or maintenance and shall be subtracted from the income of the payor of the alimony ... before the court determines the amount of a child support award." § 12–204(a)(2)(ii). After reading the circuit court's decision, it is not clear to us whether the judge made the required calculations, i.e., deducting from the income of Dr. Odunukwe any alimony payments and adding those payments to the income of the Mrs. Odunukwe and apportioning child support payments between the parties. As we are remanding the case for reconsideration of the monetary award, we will also ask the circuit court to clarify the calculation and apportionment of child support.

█ The remainder of the expenses challenged by Dr. Odunukwe (alimony, family home expenses, health insurance for the children) are authorized by the Family Law Article, and the assignment of these expenses falls within the discretion of the circuit court. We do not find that the amounts set by the court are "unconscionable." Accordingly, we perceive no abuse of the court's discretion in ordering Dr. Odunukwe to pay these amounts.

### III.  Rehabilitative Alimony

Dr. Odunukwe next argues that he must pay rehabilitative alimony to Mrs. Odunukwe for an excessive period of time. In addressing the issue of alimony, the court opined:

> [I]t is the judgment of the Court that [Mrs. Odunukwe] deserves and shall receive alimony from [Dr. Odunukwe]. This alimony, however, will not be of indefinite duration, but for sufficient time for [Mrs. Odunukwe] to conclude her educational pursuits in obtaining her Ph.D. in her chosen field to accompany her previously earned Bachelor of Science and Master's degrees in Public Health Nutrition.

Hence, it is ORDERED that [Dr. Odunukwe] pay alimony to [Mrs. Odunukwe] in the amount of $400 per month for a period of twelve (12) years commencing upon the date of this order.

■ Dr. Odunukwe argues that, in light of Mrs. Odunukwe's testimony that she could obtain her Ph.D. in three to five years, a twelve year period of rehabilitative alimony is excessive. Section 11–106 of the Family Law Article lists a multitude of factors that the court is to consider when fashioning an award of alimony. Here, the court stated that it considered all the factors listed in § 11–106. Not only did the court make special mention of the advance degree sought by Mrs. Odunukwe, but the court also mentioned the "huge contributions" Mrs. Odunukwe made to the family. In addition, it is proper for the trial judge to take into consideration the fact that a single mother faced with the task of caring for three preteen children may need additional time to obtain a Ph.D. and employment in her chosen field.

As Chief Judge Murphy, writing on behalf of the Court of Appeals, held in *Tracey v. Tracey,* 328 Md. 380, 385, 614 A.2d 590 (1992):

An alimony award will not be disturbed upon appellate review unless the trial judge's discretion was arbitrarily used or the judgment below was clearly wrong. ... This standard implies that appellate courts will accord great deference to the findings and judgments of trial judges, sitting in their equitable capacity, when conducting divorce proceedings.

(Citations omitted.)

The circuit court considered all the requisite factors in determining the alimony award. The court's emphasis of one or two factors in no way affects the outcome of the issue. The court is expected to exercise its discretion in light of all of the factors. Here, the court did so, and as a result, we perceive no abuse of discretion.

## IV.   Attorney's Fees

Next, Dr. Odunukwe argues that he should not be required to pay $5,000 toward Mrs. Odunukwe's attorney's fees.   He claims that Mrs. Odunukwe sought advice from seven attorneys during the course of the proceedings, thereby substantially increasing her legal fees.   Dr. Odunukwe also contends that Mrs. Odunukwe's legal fees were compounded by her own unjustifiable actions.   With regard to this point, Dr. Odunukwe notes that Mrs. Odunukwe's attorneys were forced to respond to two pleadings to enforce visitation rights.   Dr. Odunukwe contends that he filed the petitions when Mrs. Odunukwe refused to allow him to see the children.   According to Dr. Odunukwe, Mrs. Odunukwe had no legitimate basis for denying visitation.

■   Section 11–110 of the Family Law Article authorizes the court to order either party to pay "reasonable and necessary" expenses incurred by the other party during the proceeding.   *See Wassif v. Wassif,* 77 Md.App. 750, 765, 551 A.2d 935 (1989).   Such reasonable and necessary expenses include counsel fees and costs.   Evidence before the court indicated that, exclusive of any amounts Mrs. Odunukwe may have owed to other attorneys, she owed fees of $7,400 to the attorney who represented her at trial.   The court refused to assess the entire $7,400 amount against Dr. Odunukwe and, instead, awarded Mrs. Odunukwe attorney's fees of $5,000.   In so doing, the court decided that, under the circumstances, $5,000 was a reasonable amount.   We are cognizant of no reason to disturb the exercise of the circuit court's discretion.

## V.   Visitation

Last, Dr. Odunukwe argues that the circuit court erred in ordering a visitation schedule contrary to the schedule agreed upon by the parties.   During the proceeding, the parties placed an agreement on the record.   First, the parties agreed to share joint legal custody of their three children.   They stipulated, however, that Mrs. Odunukwe was to have primary physical custody of the children.   The parties also agreed that

Dr. Odunukwe was to have visitation with the children every other weekend from 7:00 p.m. on Friday until 6:00 p.m. on Sunday. With regard to holidays, the parties agreed that they would alternate the following holidays: Thanksgiving, the first half of Christmas vacation (the end of school through December 23), Christmas Eve through January 1, Martin Luther King's birthday, President's Day, Easter, Memorial Day, Fourth of July, and Labor Day. The parties also agreed that Dr. Odunukwe was to have at least two weeks of visitation with the children during summer vacation and that he may have the children for up to one-half of their summer vacation. In addition, the parties agreed that the children would spend each Mother's Day with Mrs. Odunukwe and each Father's Day with Dr. Odunukwe. The parties further agreed to alternate time on the children's birthdays.

Dr. Odunukwe contends that the court's order is defective, because it deviates from the parties' agreement in two respects. First, the court granted to Dr. Odunukwe two weeks of summer vacation visitation but omitted the provision entitling Dr. Odunukwe up to one-half of summer vacation. Second, when delineating the holiday visitation schedule, the court listed Christmas Eve and Christmas Day as separate holidays. In so doing, the court omitted from the visitation schedule the period of time from the beginning of Christmas vacation to Christmas Eve and the period of time from December 26 through January 1. Dr. Odunukwe argues that the court was clearly erroneous in failing to adopt the visitation schedule reached by the parties.

■■■■ The court is not obligated to accept an agreed upon visitation schedule. Visitation is a matter affecting the best interest of the children and a matter over which the chancellor must exercise his or her own discretion. The judge made only slight modifications to the schedule agreed to by the parties while stressing that the parties are to be flexible and accommodating on the issue of visitation. We see no abuse of discretion and decline to disturb the court's ruling.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR RECONSIDERATION OF THE MONETARY AWARD AND FOR RECONSIDERATION OF CHILD SUPPORT APPORTIONMENT.

COSTS TO BE PAID TWO–THIRDS BY APPELLANT AND ONE–THIRD BY APPELLEE.