551 A.2d 935

**Patricia Lynn WASSIF**

v.

**Anis M. WASSIF.**

**No. 651, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 11, 1989.

752

Stuart N. Braiterman (Diane G. Goldsmith, on the brief), Baltimore, for appellant.

J. Seymour Sureff, Baltimore, for appellee.

Argued before MOYLAN, KARWACKI and ROSALYN B. BELL, JJ.

MOYLAN, Judge.

The appellant, Patricia Lynn Wassif (Wife), and the appellee, Anis M. Wassif (Husband), were married on December 21, 1970. On February 26, 1987, the Wife filed a complaint for an absolute divorce and other relief in the Circuit Court for Anne Arundel County. A decree was signed by the court on December 22, 1987, awarding the Wife an absolute divorce. The decree, in addition, awarded to the Wife rehabilitative alimony of $500 per week for three years;

care and custody of the couple's three minor children; child support in the amount of $200 per week per child; use and possession of the marital home and personal property therein for three years; a marital award in the amount of $83,976.50; and a 1981 Cadillac. The decree further provided that the Husband will be entitled to claim one of the minor children as a dependent on his income tax returns and that each of the parties will pay his or her own attorney's fees. The Wife has filed an appeal from the court's decree, and the Husband has filed a cross-appeal.

The circumstances that led to the divorce are not at issue here. The Husband does not contest the granting of a divorce to the Wife on grounds of adultery. Instead, the Wife and the Husband, on the appeal and cross-appeal, respectively, contest various provisions of the divorce decree dealing with monetary and property matters.

## ALIMONY

The Husband, a native of Egypt, is an anesthesiologist. He emigrated to the United States in 1970 and married his wife in December of that year, when he was in the last month of his internship at South Baltimore General Hospital. Since 1974, he has worked at North Arundel Hospital.

The Wife, a Maryland native, completed high school and then received certification as an X-ray technician at South Baltimore General Hospital. She worked as an X-ray technician for some nine months before she became pregnant with her first child and stopped work in 1972. Before obtaining a position as an X-ray technician, she had worked as a bank teller. During the course of their marriage, the parties had three children, who were ages 14, 13, and 6 at the time of the divorce.

Although the Wife did not work outside of the home after she became pregnant, she did, in addition to raising the children and maintaining the house, work at home as a secretary to her husband. In 1976, the Husband left the professional group with which he had been associated and

formed his own professional association, which he operated out of the marital home at 8 Sonora Drive in Pasadena. The Wife did his billing and bookkeeping and continued in that capacity until March, 1987. The Husband's gross fees from his medical practice were $270,000 in 1983; $332,000 in 1984; $348,000 in 1985; $369,000 in 1986; and $410,000 in 1987.

At the time of the divorce, the Wife was 36 years of age. Her certification as an X-ray technician had lapsed. She had returned to school, however, on a part-time basis at Anne Arundel Community College and was working on an A.A. Degree. She testified that she hopes to go on and get a B.A. Degree in Business Administration and thereby become employable in that area.

The Wife contends that the court abused its discretion in failing to award her indefinite alimony and that the $500 per week of rehabilitative alimony which the court awarded to her for three years was too low in comparison to the Husband's "unconscionably disparate" income. On the other hand, the Husband, on his cross-appeal, maintains that the amount of alimony decreed is excessive.

The purpose of alimony is to provide financial support to an economically dependent spouse until that spouse becomes self-supporting. Md.Fam.Law Code Ann. § 11–106(c)(2) provides, however, that the court may award alimony for an indefinite period under certain circumstances:

> "(c) *Award for indefinite period*—The court may award alimony for an indefinite period, if the court finds that:
>
> .  .  .  .  .
>
> (2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate."

Indefinite alimony may thus be warranted where it would be impractical to expect the dependent spouse to become

self-supporting through further education or training or where rehabilitative alimony for a limited time would result in gross inequity. *Holston v. Holston*, 58 Md.App. 308, 473 A.2d 459 (1984).

In this case, the trial judge awarded the Wife alimony of $500 per week for three years rather than for an unlimited period of time because he found that "she will have a substantial capital basis on which to build to provide her current income" from the sale of numerous Ocean City condominiums which were owned by the parties as tenants by the entireties during the marriage and which are now owned as tenants in common. The Husband contends that one-half of the proceeds from the sale of these condominiums and the marital home will net the Wife over $500,000.

The fact remains, however, that these condominiums (which have a negative cash flow) have not yet been sold. Whatever income the proceeds will generate is, therefore, uncertain. The Wife, furthermore, does not have any other significant income-generating assets. The only income that she now has is that generated by the marital award, which is being paid to her in installments over a three-year period. She is unemployed and has not worked outside of the home since 1972. She does not have much education beyond high school and does not have any skill which would qualify her for more than a modest-paying job. In some two years hence, when the rehabilitative alimony which the court awarded is due to end, the Wife will still not have any significantly greater marketable skill. The testimony of a rehabilitation expert was that upon completion of her two-year degree at the community college, her earnings as an office manager will still be grossly disproportionate to those of her husband, whose salary for the corporate year ending August 31, 1987, was $276,300. The expert testified:

"The first year earnings as a radiological technician average approximately thirteen thousand dollars, an office manager would average around fifteen thousand ...and compares with an anesthesiologist for the approximate wages that were obtained on records was about four

hundred thousand dollars for Dr. Wassif. Projected five years using a conservative ten percent increase in earnings over the five year potential, and including an increase in the third year as a radiological technician certifying her as a class B, which is actually greater than a ten percent increase, the fifth year earning potential would go to nineteen thousand dollars if she were able to be a radiological technologist, twenty two thousand dollars if she was an office manager, as opposed to if we take the projected earnings of Dr. Wassif over the five year period of time on a ten percent increase. It would be five hundred and eighty five thousand dollars. *It would be roughly twenty six times potential earnings between that of Mrs. Wassif to her spouse, Dr. Wassif."* (Emphasis added.)

The situation herein is very much like that in *Holston v. Holston, supra.* In that case, the husband, a professor at the University of Maryland Dental School, had an income in excess of $85,000 per year at the time of trial while the wife, re-entering the job market after 15 years, would have been able to earn $13,000 per year. The trial court awarded the wife alimony for three years at a rate of $150 per week. In finding that the trial court abused its discretion in failing to award the wife indefinite alimony, we there said, at 58 Md.App. 322–323, 473 A.2d 459:

"At the time of the divorce, Dr. Holston was an assistant professor at the University of Maryland Dental School. He also practiced dentistry through a faculty practice program at the school and held numerous consulting positions. His gross income was $87,880 in 1981 and $86,343 in 1982. Mrs. Holston, on the other hand, has not been employed since June 1967. She attended Mount St. Agnes College for approximately a year-and-a-half before gaining employment as a secretary. Her only employment experience has been as a secretary. When she left the job market in 1967, she was earning $5,000 per year as a secretary at the University of Maryland Medical School. At the time of trial, secretaries at the

university were earning approximately $13,000 per year. Even if appellant, re-entering the job market after fifteen years, would be able to gain employment at a similar salary, her earnings would be less than 15 per cent those of appellee. There is nothing in the evidence to indicate that appellant would ever be able to eliminate or even substantially diminish such disparity. Assuming appellant used her three years of alimony to return to college, receive a degree and acquire a marketable skill, it is questionable whether after graduation she could earn a salary even approaching appellee's earnings. Compounding the difficulty of obtaining an education and a marketable skill is the necessity to provide and care for five minor children. Reading the record, we see no reason to expect that if alimony terminates after three years the respective standards of living of the parties would not then be 'unconscionably disparate.'"

*See also Benkin v. Benkin,* 71 Md.App. 191, 524 A.2d 789 (1987).

■ Although we see no abuse of discretion in the amount of the alimony awarded—$500 per week, we hold that the trial judge did abuse his discretion in limiting the alimony to a three-year period. The evidence indicated that if the alimony were to end at such time, the respective standards of living of the Husband and the Wife would be "unconscionably disparate." In view of the circumstances—the Wife's lack of any significant income at this time versus the Husband's substantial income; uncertainty as to how much income the proceeds from the sale of marital property will generate and whether this will offset the Wife's modest income; the Wife's grossly disparate earning potential in the foreseeable future as compared to that of the Husband; and the Wife's lack of fault in the breakup of the marriage—indefinite alimony was warranted. This indefinite alimony, however, is always subject to modification by the court. Should the income or circumstances of either of the parties change significantly, the alimony can be modified, in the discretion of the court.

## DEPENDENCY TAX EXEMPTION

Next, the Wife contends that the trial judge was without power to grant to the Husband the right to claim one of the minor children as an exemption on his federal and state income tax returns.

Prior to January 1, 1985, IRC § 152(e)(2)(B)(i) and (ii) (1982) provided that unless otherwise specifically agreed to in writing by the parties or addressed in a court decree, the non-custodial parent could claim a dependency tax exemption if he or she paid more than $1,200 toward the support of a child in any calendar year and the custodial parent did "not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody." By virtue of the Deficit Reduction Act of 1984 (Pub.L. No. 98–369, 98 Stat. 494), this law was amended to provide that the custodial parent is now always entitled to the exemption unless he or she executes a signed waiver disclaiming the child as an exemption for a given year. IRC § 152(e)(2)(A) (Supp. II, 1984). Thus, under the new law, a court order, standing alone, is ineffective to transfer a dependency exemption to a non-custodial parent.

The question becomes, however, whether a court has the power to order a custodial parent to execute such a waiver in favor of a non-custodial parent. The legislative history of the 1984 amendment indicates that the purpose of the new law was to relieve the IRS of acting as the mediator in disputes between parents over exemptions. Up to that time, the IRS had been involved in numerous factual disputes between divorced parents over which parent provided more support for a child. The new statute was meant to address the desire of the IRS not to get involved in such factual disputes where it had very little, if anything, to gain by the outcome. The Legislative History of the Deficit Reduction Act (Pub.L. No. 98–369) reported in H.R.Rep. No. 432, Part II, 98th Cong., 2d Sess., *reprinted in* 1984 *U.S. Code Cong. & Admin.News* 697, 1140, gives as the reasons for the change:

"The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service."

In *Cross v. Cross*, 363 S.E.2d 449 (1987), the West Virginia Supreme Court of Appeals found that Congress's silence in the new statute as to whether a state trial court can require a custodial parent to execute a waiver "demonstrates Congress's surpassing indifference to how the exemption is allocated as long as the IRS doesn't have to do the allocating." *Id.* at 457. The court there concluded that Congress did not intend to forbid state courts from allocating the exemption and that a state court has the equitable power to order a custodial parent to sign the necessary waiver:

"[U]nder the new IRC § 152(e) a state court does not have the power to allocate the exemption simply by court order alone (as it could have done before the 1984 Amendment), but it does have the equitable power to require the custodial parent to sign the waiver.... [T]here is *no prohibition*—express or implied—on a state court's requiring the execution of the waiver, and because state court allocation of dependency exemptions has been custom and usage for decades, it is more reasonable than not to infer that if Congress had intended to forbid state courts from allocating the exemption by requiring the

waiver to be signed, Congress would have said so." (Footnote omitted) (Emphasis in original). *Id.* at 458. Other courts have similarly held that state court allocation of the exemption to a noncustodial parent does not interfere with Congressional intent. *See Pergolski v. Pergolski,* 143 Wis.2d 166, 420 N.W.2d 414 (1988); *Lincoln v. Lincoln,* 155 Ariz. 272, 746 P.2d 13 (1987); *Fudenberg v. Molstad,* 390 N.W.2d 19 (Minn.App.1986). *But see Gerardy v. Gerardy,* 406 N.W.2d 10 (Minn.App.1987); and *Theroux v. Boehmler,* 410 N.W.2d 354 (Minn.App.1987). *Contra Lorenz v. Lorenz,* 166 Mich.App. 58, 419 N.W.2d 770 (1988); *Davis v. Fair,* 707 S.W.2d 711 (Tex.App.1986).

We conclude that a custodial parent may be ordered to execute the necessary waiver of a dependency exemption in favor of a non-custodial parent who is paying child support. The court's order in this case, however, was ineffectual to accomplish this purpose. The court order provided that the Husband will be entitled to claim one child as a dependent on his tax returns. As we have already indicated, under the current law, such a court order, standing alone, is ineffective to transfer a dependency exemption from a custodial to a non-custodial parent. Since this case is being remanded to the trial court in any event, the court on remand should make clear that the Wife is to execute a yearly waiver of the dependency exemption for one child in consideration of the child support she will be receiving.

## MARITAL PROPERTY

With respect to the marital property, the Wife contends that the Husband improperly dissipated or squandered certain marital assets and that the trial judge improperly failed to include these amounts in calculating the marital award. Specifically, the Wife contends that the trial judge improperly precluded testimony that the Husband had dissipated pension assets through improper investment activities, that the judge failed to consider funds from the sale of an Ocean City condominium which the Husband squandered on his mistress, and that the trial judge improp-

erly ordered that the Husband be given credit for any monies he expends since the date of the divorce with regard to the negative cash flow of the remaining nine Ocean City condominiums. With respect to the pension assets, the trial judge found no evidence of mishandling of this fund—just as the Husband's speculation had caused the pension fund to increase, his speculation had also caused it to decrease. Under the circumstances, there was no abuse of discretion in not permitting the Wife to explore the dissipation of pension assets further. With respect to the Ocean City condominium which was sold prior to trial, the evidence indicated that the proceeds were used to pay off joint obligations of the parties and reduce the mortgages on jointly owned properties. With respect to the nine remaining Ocean City condominiums, we see no abuse of discretion on the part of the trial judge in giving the Husband credit for any negative cash flow he incurs in maintaining them until they are sold. With respect to the condominiums, we note further that the trial judge, in calculating marital property, found that the Wife is entitled to one-half of their net value. Since the condominiums are now titled as tenants in common, the Wife will receive half of the net proceeds from their sale. The Husband, whose lucrative business income enabled him to purchase all of this property, has no complaint with the calculation of the Wife's share of the condominiums nor with the marital award. In view of the estimated several hundred thousand dollars the Wife will receive as her share of the proceeds from the sale of the remaining nine condominiums, the complaints which she now makes with regard to them are trivial.

With respect to the Ocean City condominiums, the Wife also contends that the trial judge erred in refusing to order a sale in lieu of partition of the condominiums pursuant to Md.Fam.Law Code Ann. § 8–202. The judgment of December 22, 1987 did not order such a sale in lieu of partition even though the Wife had urged at trial that a trustee be appointed to sell the properties. There was testimony at trial that the value of properties had decreased

in Ocean City because of a depressed market. Apparently, the trial judge gave the parties time to try to sell the condominiums privately rather than at a forced sale where the proceeds would probably be less. At a hearing on the Wife's motion for new trial, where she again urged that a trustee be appointed, the court indicated that its intent in not ordering an immediate sale was that the parties be given time to agree on the disposition of the properties:

> "Well the only thing the Decree says with regard to that is that they should try to agree on how it's going to be disposed of and, if they can't, then you come back and ask for trustees to be appointed."

Under the circumstances, we see no abuse of discretion on the part of the trial judge in not ordering the immediate sale of the properties. On the other hand, a year has now passed since the divorce decree was signed. If the parties have not yet reached an agreement as to the sale of the condominiums, it would not be inappropriate for the Wife now to move for the appointment of a trustee to sell them.

### WIFE'S ATTORNEYS' FEES AND SUIT MONEY

The Wife complains that the court erred in refusing to grant her attorneys' fees, expert witness fees, and detective fees. The court refused to award to the Wife any suit money and counsel fees with the exception of a $500 balance owing to a rehabilitation counselor and open court costs. We hold that the trial court abused its discretion.

Md.Fam.Law Code Ann. § 11–110(b) provides that "[T]he court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending [an alimony proceeding]." Correspondingly, Md.Fam.Law Code Ann. § 12–103(a) provides that "The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person: (1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties . . . ." Both alimony and child support were very much in issue in this case.

The required considerations before ordering any such payment are the same. With respect to alimony, § 11–110(c) states:

"(c) *Required considerations.*—Before ordering the payment, the court shall consider:

(1) the financial resources and financial needs of both parties; and

(2) whether there was substantial justification for prosecuting or defending the proceeding."

With respect to child custody and child support, § 12–103(b) provides:

"*Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing or defending the proceeding."

In denying the Wife suit money and counsel fees, the court stated:

"I think the expenses have been run up unnecessarily here and to that extent since there is money ... equal money, really, as to each of them, Mrs. Wassif has sufficient funds from which to pay her own attorneys' fees. So I will not award any attorneys' fees. As to the expenses of litigation, the ... the bill that Mr. Zumbrun entered in the amount of twenty four hundred dollars is part ... was paid out of the home equity loan and is being paid off, as it is, by Dr. Wassif since it is from the home equity loan, so that there is no need for me to get involved in that.[1] Any other open costs I think should be paid by Dr. Wassif. Well, there was the fee of Mr. Schnepfe I should address specifically. I think that was a total waste of everybody's money, but I'm not going to

---

1. The Wife claims that she borrowed money from her father to pay the private investigator's fee and that the home equity loan was not used for this purpose.

assess that against Dr. Wassif. That was just pie in the sky ...and worthless testimony. And Mr. Brown, the vocational rehabilitation specialist ...I think Dr. Wassif can pay the balance of five hundred dollars due him. And the open court costs."

Just because the marital assets which were owned by the parties at the time of the divorce were divided equally hardly means that the Wife is in an equal position to pay (or, for that matter, should have been required to pay) her attorneys' fees and other costs of the divorce proceeding, which amounted to approximately $35,000. The income generated from the monetary award of $83,976.50 (payable in installments of $2,709.66 per month) is not enough to pay off her attorneys' fees and other expenses of this litigation. Indeed, these fees and costs would exhaust all the principal she has received to date. The $500 per week alimony, furthermore, is meant for her ordinary living expenses. The expenses which the Wife incurred for a private investigator were occasioned by the Husband's adultery. The expenses which she incurred for an accountant were necessary because of the Husband's substantial income and because she was seeking alimony and child support. In view of all of these facts and including the evidence that the Husband paid for his attorneys' fees out of marital assets, the Wife is entitled to an award of suit money and a substantial portion of her attorneys' fees that the court finds reasonable and necessary. We leave the actual amount in the discretion of the trial court.

## MISCELLANEOUS CONTENTIONS

The Wife next argues that she should have been permitted to impeach the Husband's credibility by questioning him about a letter which he wrote to his mistress, in contradiction of testimony he had given at his deposition. In her complaint for divorce, the Wife alleged that the Husband had committed adultery. At the trial, this was proven and was not contested by the Husband. Suffice it to say that the Wife received the divorce which she sought.

We fail to see what further benefit such testimony would have brought her.

The Wife lastly argues that the court erred in ordering that the Husband be given credit when the marital home is sold, after the three-year use and possession period, for any mortgage payments he has made on the marital home dating back to July 6, 1987, the supposed date of the *pendente lite* use and possession order. The Wife argues that the mortgage payments are a form of child support and that the Husband should not be given any credit for these. We disagree. Just as the decision of whether to sign a use and possession order was in the sound discretion of the trial court, so also is the decision of whether to give the spouse credit for any mortgage payments he or she makes during its pendency.[2] Any payments that were made by the Husband prior to the date of the divorce, however, were made from marital property. Therefore, the Husband may receive credit only for any payments he has made from the date of the divorce. *Prahinski v. Prahinski*, 75 Md.App. 113, 141, 540 A.2d 833 (1988). *See also Crawford v. Crawford*, 293 Md. 307, 443 A.2d 599 (1982).

Finally, on his cross-appeal, the Husband argues that child support of $200 per week per child is excessive when he has already voluntarily agreed to pay for the children's health insurance and health costs, shelter, education, and utilities. In view of the Husband's gross income in excess of $400,000 per year, we cannot say that the trial judge abused his discretion in ordering that the Husband pay child support of $31,200 per year to accommodate the needs and lifestyles of his three minor children.

In conclusion, we remand this case to the circuit court for the entry of an order modifying the divorce decree as follows:

---

2. The chancellor, of course, must bear in mind that in giving such credits, the children may be the losers. If credits are given the nonresident spouse, the custodial resident spouse, may not be in a position to afford to accept the benefits of a use and possession order, thereby rendering the children the losers.

1) awarding the Wife indefinite alimony of $500 per week;

2) requiring the Wife to execute a waiver of the dependency exemption for one of the children in favor of the Husband;

3) awarding the Wife attorneys' fees and suit money; and

4) ordering that the Husband be given credit for funds advanced on the marital home dating back to the date of the divorce—December 22, 1987.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.