653 A.2d 1017

**Warren W. SCOTT, Jr.**

v.

**Jean A. SCOTT.**

**No. 438, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Feb. 14, 1995.

502

James E. Clubb, Jr., Ocean City, for appellant.

James W. Almand (Ayres, Jenkins, Gordy & Almand, P.A., on the brief), Ocean City, for appellee.

Submitted before BISHOP, ALPERT and FISCHER, JJ.

BISHOP, Judge.

On May 6, 1992, appellee/cross-appellant, Jean A. Scott ("Wife"), filed a complaint for limited divorce from appellant/cross-appellee, Warren W. Scott, Jr. ("Husband"), in the Circuit Court for Wicomico County. In her complaint, Wife alleged desertion and cruelty. Husband denied the cruelty allegation, admitted leaving the marital home as of March 15, 1992, but denied such act constituted desertion. Husband

filed a counter-complaint for limited divorce on June 10, 1992, alleging voluntary separation and constructive desertion. Wife denied both allegations. On March 24, 1993, Husband filed an amended counter-complaint for absolute divorce, alleging the same grounds in his original counter-complaint. Wife later amended her complaint to request an absolute divorce.

The trial court entered a *pendente lite* order giving Wife temporary custody of the parties' two children and use and possession of the family home and family use personal property. Husband received visitation rights, was ordered to pay child support, to provide health and dental insurance for the children, and to return certain valuables to Wife. The *pendente lite* order also mandated that the parties split evenly all medical bills not covered by insurance, the costs of all house repairs, and all mortgage payments and taxes on the family home. The trial court reserved its ruling with respect to alimony.

Wife answered Husband's amended counter-complaint and admitted voluntary separation, but denied constructive desertion. Wife also filed an amended complaint for divorce, "absolute or limited," alleging desertion and cruelty. Husband reasserted that he separated from Wife on March 15, 1992, but denied desertion and cruelty. The trial court held the divorce hearing on September 24 and 29, 1993. On September 24, the court orally granted Wife a divorce on the ground of desertion by Husband. On December 14, 1993, the court issued its opinion and order on the remaining issues involving marital property distribution, the monetary award, custody and visitation, child support, and alimony. Both parties appealed that order.

### Issues

Husband and Wife raise numerous issues on appeal and cross-appeal, which we consolidate and rephrase for clarity:

I. Alimony

 A. Did the trial court err in granting Wife alimony?

B. Did the trial court err in not granting Wife indefinite alimony?

II. The Monetary Award

A. Did the trial court err in its method of computing the monetary award?

B. Did the trial court err in not specifying the method of payment of the monetary award?

C. Did the trial court err in granting Wife a fixed dollar amount of Husband's pension "as, if, and when" received?

III. Child Support

A. Did the trial court err in its use of the Child Support Guidelines?

B. Did the trial court err in failing to order Husband to provide the children with health and dental insurance?

IV. Use and Possession

Did the trial court err when it failed to incorporate the *pendente lite* order relative to use and possession of the family home and family use personal property that the parties previously had stipulated would be controlling?

V. Sale of Jointly Owned Realty and Personalty

Did the trial court err when it failed to order the sale of all jointly owned property?

VI. Attorney's Fees

Did the trial court err in not awarding Wife attorney's fees and litigation costs?

### Facts

Husband and Wife were married May 21, 1979. They had two children during their marriage, Alexander, born September 19, 1980, and Meredith, born February 26, 1986. Husband and Wife purchased their family home in Salisbury, Maryland during 1980 for $88,000. The parties increased the value of the family home to $138,000 by the addition of $50,000 in improvements. Both parties owned substantial property, real and personal, marital and nonmarital, and both were monetary and nonmonetary contributors to the marriage. Ac-

cording to Wife, in December 1991, Husband announced he was leaving the family home. He moved to Ocean City, Maryland on February 15, 1992, without Wife's consent. He returned to the family home, on March 14, 1992, spent one night at the home, and has continuously lived away from the family home since March 15, 1992.

At the time the trial court issued its opinion and order in December 1993, Wife was thirty-nine years old and Husband was forty-five years old. Wife works two jobs that give her an approximate annual salary of $27,500. She works full-time for the University of Maryland Cooperative Extension Service in Salisbury as an extension advisor. She also performs freelance writing for various companies. Wife has been the primary caretaker for the children. Husband's annual salary is approximately $72,000, plus bonuses. He is a territory sales manager for CIBA–GEIGY Corporation, where he has been employed since 1974. CIBA–GEIGY provides Husband with a motor vehicle, health and dental insurance, pension plan, and a 401(k) savings plan. Husband also has two expense accounts. Additional facts will be discussed *infra.*

### *Discussion*

First we discuss the validity of the divorce orally granted to Wife on the grounds of desertion by Husband. The judgment of divorce must be properly granted; if not, then the issues raised on appeal would be moot. *See e.g.,* Md.Fam.Law Code Ann., § 8–203(a)(1) (1991) ("the court shall determine which property is marital property[ ] *when the court grants* an annulment or an *absolute divorce*") (emphasis added); *id.* § 8–205 (the court may not grant a monetary award until after the court determines which property is marital property; marital property is not determined until after an absolute divorce is granted).

As indicated *supra,* the divorce hearing was conducted on September 24 and 29, 1993. At the end of the first day of the hearing, the following colloquy took place between the court and counsel for the parties:

THE COURT: All right. We'll recess until Wednesday morning [September 29]. Does nine o'clock suit everybody?

[WIFE'S ATTORNEY]: That's fine, Your Honor, thank you, Judge.

[HUSBAND'S ATTORNEY]: Yes, it does, Judge. *Would it be possible for you to grant the divorce today?*

THE COURT: *Well, let me ask you. You're not pursuing the [amended counter-complaint for absolute divorce], is that correct?*

[HUSBAND'S ATTORNEY]: *That's correct.*

THE COURT: *All right. I'll grant her the divorce.*

[WIFE'S ATTORNEY]: And you're reserving on the marital property issue.

THE COURT: I'll reserve on the marital property for a period of—well, do you want me to rule on custody?

[HUSBAND'S ATTORNEY]: That doesn't matter.

[WIFE'S ATTORNEY]: We can handle that on Wednesday, Your Honor.

THE COURT: All right.

(Whereupon, the hearing was concluded).

(Emphasis added). The docket entry for September 24, 1993 reads as follows:

Court grants divorce, reserves ruling on marital property, and ordes [sic] all parties to reconvene on Wednesday, September 29, 1993 at 9:00 a.m. for continuation of hearing.

The court never issued a written order, decree, or judgment of divorce. Moreover, the court never indicated that it would issue a written order of divorce. There is no specific docket entry, aside from that reprinted *supra,* indicating that an order for judgment of divorce had been filed.

The hearing continued on September 29, 1993. The court heard testimony and arguments on the remaining issues of marital property distribution, the monetary award, custody and visitation, child support, and alimony. The parties were given ten days to submit post-trial memoranda relative to the issues reserved by the trial court. Both parties, in their

memoranda, acknowledged that the court granted a divorce on September 24, 1993. On December 14, 1993, the trial court filed an extensive opinion and order relative to the property, custody, support, and alimony issues. The trial court began its discussion noting that "[t]his court orally granted a divorce on September 24, 1993 on the grounds of desertion by the Husband."

■ "[T]he threshold question that must be resolved is, simply put, 'the old, old question of when is a judgment a judgment.'" *Davis v. Davis,* 335 Md. 699, 709, 646 A.2d 365, 369 (1994) (quoting *Cedar Creek Oil & Gas Co. v. Fidelity Gas Co.,* 238 F.2d 298, 298 (9th Cir.1956)). In *Davis,* the Court of Appeals discussed, at length, Maryland law relative to granting a judgment. A judgment is "any order of court final in its nature entered pursuant to these rules." Rule 1–202(m). Rule 2–601 dictates the manner in which a judgment is to be entered. In *Davis,* the Court of Appeals, reading Rules 1–202(m) and 2–601 in conjunction, determined that

> two acts must occur for an action by a court to be deemed the granting of a judgment: the court must render a final order and the order must be entered on the docket by the clerk. These two required acts—*rendition* of a judgment by the court and *entry* of the judgment by the clerk—are discrete occurrences.

*Davis,* 335 Md. at 710, 646 A.2d at 370. "A judgment is therefore not granted until it is both properly rendered and properly entered." *Id.* Rendition of a judgment, the court stated, "is the court's pronouncement, *by spoken word in open court* or by written order filed with the clerk, of its decision upon the matter submitted to it for adjudication." *Id.* (emphasis added). The clerk's entry of the judgment on the docket is a purely ministerial act evidencing the judicial act of the court rendering the judgment. *Id.* We need to determine whether the court's oral pronouncement, in open court, "grant[ing Wife] the divorce," is a valid judgment of divorce.

Although a trial court's judgment must be an unqualified, final disposition of the matter in controversy, there are no formal requirements regarding the rendition of a judgment. *Id.* In the case *sub judice,* after determining that no counter-complaint for divorce was pending, the court granted Wife a divorce. In stating "[a]ll right[,] I'll grant her the divorce,"

> it is clear that the court found no impediment to rendering a judgment of divorce at that time. More importantly, there is nothing in the court's language which would even remotely suggest that any further hearings or further action by the court was either contemplated or necessary for the divorce to be granted: there was no "contemplation that a further order [was to] be issued or that anything more [was to] be done."

*Id.* at 712, 646 A.2d at 371 (quoting *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41–42, 566 A.2d 767 (1989)). Although the trial court's statement, standing alone, might not indicate that the court intended to render a divorce judgment at that time, the trial judge further noted he was reserving on marital property and other issues.

> If the court did not intend to render the judgment of divorce on [September 24, 1993], there would have been no reason for the court, at that time, to reserve the power to make a marital property distribution. We find that the reservation of the power to rule on the marital property issues is strong evidence that the court intended to grant [Ms. Scott a divorce] on [September 24, 1993].

> We additionally note that both the court and the parties themselves expressly referred to [September 24, 1993] as the date of divorce during later proceedings. . . .

*Davis,* 335 Md. at 712, 646 A.2d at 371. As indicated *supra,* both parties noted, in their memoranda, that the divorce was granted on September 24, 1993. Similarly, in its opinion and order, the trial court acknowledged that it orally granted the parties a divorce on September 24, 1993. The docket entry also reflects that the divorce was granted on September 24,

1993. Based on the record, we conclude that the court properly rendered a judgment of divorce on September 24, 1993. We note, however, the Court of Appeals' statement that

> [w]hen a judgment is rendered orally, the court must take special care to ensure that its remarks clearly indicate whether a judgment is presently being rendered.... [A]l-though the Maryland Rules plainly permit the oral rendition of judgments, opportunities for error and confusion may be minimized if judgments are rendered in writing[.]

*Davis,* 335 Md. at 714, 646 A.2d at 372.

■ Next, we determine whether the judgment was properly entered on the record on that date. Rule 2–601 provides that "the clerk shall enter the judgment as directed by the court," by making a record of it in writing on the file jacket, on a docket within the file, or in a docket book. Rule 2–601(a), (b). In the case *sub judice,* the clerk made an entry on the docket that a divorce was granted; however, the trial court did not make any explicit statement directing the clerk to do so. "A court's failure[, however,] to utter the words 'The clerk shall enter the judgment on the docket' does not preclude a finding that a judgment has been properly entered by the clerk." *Davis,* 335 Md. at 716, 646 A.2d at 373. We hold, therefore, that the judgment of absolute divorce granted by the trial court to Wife on the grounds of desertion by Husband was both rendered and entered on September 24, 1993.

### I.A. Alimony

Husband argues that alimony was improperly granted to Wife. Relying on *Speropulos v. Speropulos,* 97 Md.App. 613, 631 A.2d 514 (1993), Husband contends that, when the trial court granted the divorce, the court only reserved the issue of marital property, and therefore, did not retain jurisdiction over the issue of alimony. We disagree.

■ "In Maryland, the right to claim alimony is 'extinguished at the time of the severance of the marital relationship.'" *Id.* at 617, 631 A.2d 514 (quoting *Altman v. Altman,* 282 Md. 483, 490, 386 A.2d 766 (1978)). If a trial court fails to

reserve the right to award alimony, it cannot subsequently make such an award. *Id.* In *Speropulos,* the circuit court granted Mr. Speropulos a divorce, and reserved jurisdiction over "all property issues including monetary award, if any . . . for future determination." *Id.* The trial court "did not award alimony, reserve jurisdiction over the issue of alimony in specific terms, or utilize sufficiently broad terminology to reserve alimony, such as 'this court shall have continuing jurisdiction in these proceedings.'" *Id.,* 97 Md.App. at 617–18, 631 A.2d 514 (quoting *Flood v. Flood,* 16 Md.App. 280, 286, 295 A.2d 784 (1972), *modified on other grounds,* 24 Md.App. 395, 330 A.2d 715 (1975)). We held "that a reservation as to 'all property issues' [was] insufficient to retain jurisdiction over the issue of alimony. . . ." *Id.,* 97 Md.App. at 618, 631 A.2d 514. In the case *sub judice,* however, we can conclude that it was understood that the trial court was reserving jurisdiction over alimony.

▄▄ Husband, in his opening statement during the hearing, acknowledged that "[e]ssentially our argument will be the alimony issue." At the conclusion of the first day of the hearing, the trial court, and counsel for both parties, agreed to

> get a corroborating witness . . . on the divorce, [to] grant the divorce today on the record, that would value the marital property as of today and then . . . give ninety days to reschedule and come back and take . . . testimony on the value *and the balance of the testimony* and that will wrap it up.

(Emphasis added). Moreover, when the hearing continued on September 29, 1993, the following dialogue ensued during the direct examination of Husband:

Q: Would you briefly describe the circumstance of your separation?

[WIFE'S ATTORNEY]: Your Honor, I question the relevance since the judgement of divorce has been entered on the grounds of desertion.

[THE COURT]: *But you're asking for alimony.*

[WIFE'S ATTORNEY]: Yes, sir.

(Emphasis added). Unlike the husband in *Speropulos,* Husband in the case *sub judice* acquiesced to the court's authority to award alimony. Husband did not object during trial when the court made it clear that it was retaining jurisdiction over the alimony issue. Both parties, in their post-trial memoranda, discussed the amount of alimony to be awarded. Husband did not question whether it was improper for the trial court to award alimony in the first instance. All parties acted, throughout this entire proceeding, as if alimony were reserved. Although the trial court did not make the specific statement(s) that Husband contends *Speropulos* requires, we hold that it was not necessary for the trial court to do so; it was clearly understood that the court's jurisdiction over alimony was reserved. Because, *infra,* we vacate the monetary award, it is necessary that we vacate the alimony award as well. This is because "any significant change in the monetary award will require the court to reassess its alimony award." *Melrod v. Melrod,* 83 Md.App. 180, 195, 574 A.2d 1 (1990); Md.Fam.Law Code Ann., § 8–205(b)(9) (Supp.1994).

Wife, in arguing that alimony was not extinguished, contended that the trial court only granted a limited divorce, and not an absolute divorce, on the ground of desertion. Because of some of the issues that the parties raise, as well as the torturous path that this case has taken, we shall address this argument. A trial court may decree an absolute divorce on the ground of desertion if the desertion has continued for twelve months, without interruption, before the filing of the application for divorce; the desertion is deliberate and final; and there is no reasonable expectation of reconciliation. Md. Fam.Law Code Ann., § 7–103(a)(2) (1991). Wife, in her amended complaint, asked for an absolute divorce on the ground of desertion. She alleged, in her complaint, grounds sufficient to support her accusation of desertion in accordance with the statutory requirements of § 7–103(a)(2) (all statutory references are to the Family Law Article). The record before us supports Wife's contention that Husband deserted her. The corroboration required in a contested divorce case need only be slight. *Colburn v. Colburn,* 15 Md.App. 503, 512, 292

A.2d 121 (1972). Moreover, it is clear that, under *Davis v. Davis, supra,* the trial court intended that an absolute divorce be granted. Based on the record and the trial court's actions, the trial judge granted Wife a judgment of *absolute* divorce on the ground of desertion by Husband.

### I.B. Indefinite Alimony

The trial court granted Wife alimony in the amount of $100 per week for five years. Wife contends that, "[u]nder the facts of this case it was error for the Court to limit alimony to five years." Wife argues that she should have been awarded indefinite alimony "because the 'respective standards of living of the parties will be unconscionably disparate.'" Although, in her amended complaint for divorce, Wife did not request indefinite alimony, "[w]e know of no law that requires the specific term 'indefinite' to be included in a prayer for alimony in order for it to be considered." *Cousin v. Cousin,* 97 Md.App. 506, 519, 631 A.2d 119 (1993).

This Court has affirmed grants of indefinite alimony, and refusals to award indefinite alimony, where a variety of disparities in income were projected. *See Rock v. Rock,* 86 Md.App. 598, 612, 587 A.2d 1133 (1991). "Our approval or denial of these awards clearly indicate the importance we place upon the judgment and discretion of the fact finder in evaluating and weighing the evidence and determining all the facts and circumstances in making these very important decisions." *Id.*

In the case *sub judice,* Wife's salary is $27,500 and Husband's salary is $72,000. The trial court, however, granted Wife, *inter alia,* a monetary award in the amount of $100,000 and use and possession of the family home, ordered that Husband pay Wife $1,209.60 per month in child support, and awarded Wife an interest in Husband's pension. Wife is young and healthy and has a ten-year career with the University of Maryland, a vested pension, and a Master's Degree. We hold that the trial court did not abuse its discretion in failing to award Wife indefinite alimony.

## II.A. *Monetary Award Computation Method*

Husband contests the propriety of the $100,000 monetary award given to Wife. Because the trial court erred, we shall vacate the award and remand for further proceedings.

█ Maryland law requires that, when establishing a monetary award, the trial court (1) characterize all property owned by the parties, however titled, as either marital or nonmarital, (2) then determine the value of all marital property, and (3) assign to each spouse the value of his or her nonmarital property and make an equitable distribution of the value of the marital property between the spouses. *Noffsinger v. Noffsinger*, 95 Md.App. 265, 281, 620 A.2d 415, *cert. denied*, 331 Md. 197, 627 A.2d 539 (1993).

█ Husband first asserts that the trial court erred in adding the $50,000 worth of improvements made to the marital home to the $88,000 purchase price, and then using the $138,000 figure as the denominator in arriving at Husband's nonmarital interest. We disagree. "Without offering evidence or testimony tracing payment for these improvements to nonmarital sources [Husband] has failed to meet the burden of proving that the ... [improvements were] acquired with nonmarital funds." *Id.* at 288, 620 A.2d 415. Using the formula in *Grant v. Zich,* 300 Md. 256, 276 n. 9, 477 A.2d 1163 (1984), the trial court properly determined Husband's nonmarital interest in the family home, based on the $138,000 figure. (As of October 1, 1994, an Act concerning marital property became effective. In this Act, the new definition of marital property, in effect, countermanded *Grant v. Zich,* however, the Act is only applicable to actions filed on or after October 1, 1994. *See* 1994 Md.Laws ch. 462, pp. 2212–14.) The trial court found, and the record supports, that Husband contributed $30,181 in nonmarital funds to the purchase of the home. Accordingly, the court properly found that Husband's nonmarital interest in the family home was $30,181 (21.87% of $138,-000).

The court next determined that the fair market value of the marital home at the time of trial was $170,000. We agree with

the trial court that Husband's nonmarital interest, therefore, is equal to $37,179 (21.87% of $170,000). After determining the remaining value of the marital home that was marital property, the trial court correctly applied the *Grant v. Zich* formula [Fair Market Value ($170,000) less Nonmarital Property ($37,179) less Unpaid Mortgage Balance ($19,000) ] and determined that the net value in the family home subject to equitable distribution was $113,821.

█ Husband next contends that the trial court erred in its calculations. The trial court calculated that Wife's share of the joint marital property, plus the property titled in her name, gave Wife 31.5% of the total marital property, while Husband received 68.5%. These calculations are correct. [½ of $262,131.12 (joint marital property) is $131,065.56, plus $30,765.90 (Wife's marital property) totals $161,831.46. $161,-831.46 is 31.5% of $513,711.11 (total marital property). $351,-899.65 is 68.5% of $513,711.11]. The trial court erred, however, in stating "the difference [between the parties' shares] is equal to $220,068.19." The difference between $351,899.65 and $161,831.46 is equal to $190,068.19. The opinion and order indicate that the trial court's decision to award $100,000 was based, in part, on the alleged $220,068.19 disparity in equity between the parties. Therefore, the award must be remanded in light of the $30,000 mathematical error which presumably impacted the trial court's determination of the monetary award.

Additionally, we question the trial court's consideration of the factors contained in § 8–205(b) that must be considered by the court when determining the amount of the monetary award. The trial court listed each of the ten factors, and then stated:

> Taking into account all of the factors in § 8–205(b), supra, including the award of alimony herein set forth, and the award of use and possession of the family home, as an adjustment of the equities, we grant a monetary award to the Wife in the amount of $100,000.00.

We disapproved of this mere "lip service" the trial judge gave to the statutory factors in *Ward v. Ward,* 52 Md.App. 336, 343–44, 449 A.2d 443 (1982). On remand, the trial court should "articulate more clearly the basis for its decision to grant a monetary award." *Imagnu v. Wodajo,* 85 Md.App. 208, 222, 582 A.2d 590 (1990). The court should explain whether it considered the alleged $17,000 dissipation of marital funds by Husband and the alleged $23,000 in marital funds expended by the parties, during their marriage, on nonmarital property owned by Husband.

### II.B. *Monetary Award Payment Terms*

In its opinion and order, the trial court, while granting Wife a monetary award, did not specify the method of payment. Section 8–205 provides, in pertinent part, that "[t]he court *shall determine* the amount and *the method of payment of a monetary award.* . . ." Md.Fam.Law Code Ann., § 8–205(b) (Supp.1994) (emphasis added). It is mandatory for trial courts to comply with the requirements of §§ 8–203, 8–204, and 8–205. *Freese v. Freese,* 89 Md.App. 144, 149, 597 A.2d 1007 (1991), *cert. denied,* 325 Md. 396, 601 A.2d 129 (1992).

Husband argues that an immediate lump sum payment would be inequitable, while Wife contends that the "evidence in the case clearly support[s] payment in two installments over three years." "It is well established that both the amount and manner of payment of a monetary award are committed to the discretion of the trial court." *Ross v. Ross,* 90 Md.App. 176, 188, 600 A.2d 891, *vacated on other grounds,* 327 Md. 101, 607 A.2d 933 (1992). "The entire award can be made immediately due and payable or all or part of it can be made payable in the future." *McClayton v. McClayton,* 68 Md.App. 615, 622, 515 A.2d 231 (1986). The trial court, in addition to recalculating the proper amount of the monetary award, must determine the appropriate method of payment and take into consideration the eleven factors listed in § 8–205(b).

### II.C. *Pension Benefit Division*

Wife asserts that the "Court's decision to award [Wife] $593.74 per month from [Husband's] pension 'as, if and

when' received at age 65 'was not equitable, and the Court[, therefore,] abused its discretion." We agree. In *Deering v. Deering,* 292 Md. 115, 130–31, 437 A.2d 883 (1981), the Court of Appeals outlined three methods for allocating pension benefits. "The third method approved by the Court involves the determination of a fixed percentage to be awarded to the nonemployee-spouse of any future retirement benefits received by the employee-spouse payable 'as, if and when' received." *Hoffman v. Hoffman,* 93 Md.App. 704, 718, 614 A.2d 988 (1992). *Bangs v. Bangs,* 59 Md.App. 350, 356, 475 A.2d 1214 (1984), provides the following formula:

$$\frac{1}{2} \times \text{total years and months of marriage}$$
$$\text{total years and months of employment credited towards retirement}$$

"Adoption of this method 'does not eliminate the need to assign a value to the pension ... but as a practical matter it nullifies any risk of error in the evaluation.'" *Hoffman,* 93 Md.App. at 718, 614 A.2d 988 (quoting *Imagnu v. Wodajo,* 85 Md.App. 208, 214, 582 A.2d 590 (1990)). In *Hoffman,* Judge Fischer, speaking for this Court, stated "[t]he *Bangs* formula is to be used in situations in which, at the time of the divorce, the employee-spouse has been employed for a period of time greater than the length of the marriage and thus, a portion of the pension was earned outside of the marriage." *Id.* at 719, 614 A.2d 988. Although we perceive no abuse of discretion in the trial court's use of the *Bangs* formula in determining Wife's share of Husband's pension, the trial judge did err in the overall treatment of the pension assets, including the distribution of the pension.

In its opinion and order, the trial court set out the *Bangs* formula as follows:

$$\frac{1}{2} \times \frac{\text{YEARS OF MARRIAGE}}{\text{TOTAL YEARS OF EMPLOYMENT}}$$

The court then divided fourteen years of marriage by twenty years of employment, multiplied that amount by ½, and figured Wife's marital portion of Husband's pension as 35%. The

court noted that "[t]he current fixed value of Husband's pension is $1696.41/month." Taking 35% of that amount, the court gave Wife $593.74 per month, as her portion of Husband's pension, payable "as, if and when received" by Husband at age 65. The trial court, however, should not have used the current fixed value of the pension.

As we noted in *Hoffman v. Hoffman, supra,* "[t]he *amount* of the 'as, if and when' payment, however, cannot be determined until [Husband] retires from [CIBA–GEIGY] and the *number of years of total employment is known.*" *Hoffman,* 93 Md.App. at 719, 614 A.2d 988 (emphasis added); *see also Bangs,* 59 Md.App. at 367, 475 A.2d 1214. Similarly, the trial court cannot presently determine a percentage of Husband's pension due Wife until such time as the total number of years of employment is known. *Pleasant v. Pleasant,* 97 Md.App. 711, 724, 632 A.2d 202 (1993). During trial, Husband testified that his present intentions with respect to employment with CIBA–GEIGY are "that I could work for another twenty years for the company. I worked for twenty years now and hope I can do another twenty." Therefore, fourteen years and four months of marriage (May 21, 1979 to September 24, 1993) will need to be divided by the total number of years and months credited toward Husband's retirement, at the time he retires.

The trial judge, using the same formula indicated above, determined that Husband was due 50% of Wife's pension "as, if and when" received by Wife at age 62. The parties stipulated that the current fixed value of Wife's pension was $82 per month. Although this lump sum value can be stipulated by the parties because the pension was earned entirely during the marriage, *Hoffman,* 93 Md.App. at 719, 614 A.2d 988, Husband's percentage of Wife's pension also cannot be determined until the total number of years of Wife's employment is known. *Id.* We, therefore, vacate the part of the trial court's opinion and order, relative to the pension distributions. On remand, the trial court is instructed to follow the guidelines

contained in this opinion and in *Hoffman v. Hoffman,* 93 Md.App. 704, 614 A.2d 988 (1992).

### *III.A. Use of the Child Support Guidelines (CSG) Work–Related Child Care Expenses*

Both parties question the child support award. Husband argues that the court erred in using $215 per month as Wife's actual child care expenses ($50 per week multiplied by 4.3 weeks). He argues that, although Wife testified to expenses of $50 per week, her actual expenditures in 1993, to the date of trial, were $30 per week. In his reply brief, Husband contends that Wife testified that, from January 1993 to September 10, 1993, her expenses were $1,095; therefore, $30 per week is appropriate ($1,095 divided by thirty-six weeks). Using these figures actually provides a weekly amount of $30.42, multiplied by 4.3 weeks, giving a total of $130.80 per month. Wife testified, on cross-examination, that in 1992 her child care expenses were $1,006, or $83.16 per month.

Under § 12–204(g), "[c]hild care expenses shall be determined by actual family experience, unless the court determines that the actual family experience is not in the best interest of the child . . . ." Md.Fam.Law Code Ann., § 12–204(g)(2)(i) (1991) (emphasis added). In *Krikstan v. Krikstan,* 90 Md.App. 462, 471, 601 A.2d 1127 (1992), this Court, interpreting § 12–204(g), stated that " '[s]hall' generally denotes an imperative obligation inconsistent with the idea of discretion." There was no evidence presented from which it could be determined that the actual family experience was not in the best interest of the children. "Because the actual family experience with regard to child care is in the best interest of the children, the [trial judge is] required to determine the child care expense by actual family experience." *Id.* Wife, however, testified that she pays $50 per week for child care while working full time. There is evidence to support the trial court's determination that $50 per week is the actual family child care expense, and, therefore, the trial court did not abuse its discretion in using $215 as the monthly child care expenses.

*Monthly Adjusted Actual Income*

██ The trial court, in using the child support guidelines, did not place the alimony award figure into the worksheet in arriving at the child support amount. Alimony must be considered when determining each parent's monthly adjusted actual income. *See* Md.Fam.Law Code Ann., § 12–204(a)(2) (1991). Therefore, on remand, the trial court, after it redetermines the amount of Wife's alimony, shall recalculate Husband's and Wife's child support obligation.

*Dependency Tax Exemption*

Husband was granted the dependency tax exemption for the children beginning in 1994. Wife argues that the trial court should not have granted the exemption to Husband because the court did not make the necessary written finding that shifting the exemption from Wife to Husband would be in the best interest of the children. She also contends that it is inconsistent with the CSG. We agree with Wife that the court acted improperly, but for different reasons.

██ Contrary to Wife's argument, the CSG do not require a written finding that shifting the exemption to Husband, the non-custodial parent, is in the best interest of the children. Application of the CSG, or rather any deviation from applying the CSG, does not concern the dependency tax exemption. The CSG do not affect that which is required by the Internal Revenue Code. Rather, it is this Court's prior holding in *Wassif v. Wassif,* 77 Md.App. 750, 551 A.2d 935 (1989), and § 152(e)(2) of the Internal Revenue Code, that controls this issue. Our conclusion in *Wassif* is applicable here:

> We conclude that a custodial parent may be ordered to execute the necessary waiver of a dependency exemption in favor of a non-custodial parent who is paying child support. The court's order in this case, however, was ineffectual to accomplish this purpose. The court order provided that the Husband will be entitled to claim [the dependency tax exemption for the children beginning in 1994]. As we have already indicated, under the current law, such a court order,

standing alone, is ineffective to transfer a dependency exemption from a custodial to a non-custodial parent. Since this case is being remanded to the trial court in any event, the court on remand should make clear that the Wife is to execute a yearly waiver of the dependency exemption for [the children] in consideration of the child support she will be receiving.

*Id.* at 761, 551 A.2d 935.

The trial court must state its reasons for awarding Husband the dependency tax exemption. Although *Wassif* was decided prior to the CSG, as long as the court considers the savings to the party benefiting from the dependency tax exemption, when determining that party's income, the court may order the execution of the necessary waiver as permitted by *Wassif.* To the extent that granting the exemption to a party affects the incomes of both parties and, therefore, the application of the CSG, the CSG must be considered. The best interests of the children are, therefore, affected only indirectly, to the extent the dependency tax exemption affects the income of the respective parties. It is to this extent that the best interests of the children may be involved.

### III.B. Allocation of Health and Dental Insurance

Wife argues that the trial court erred by not ordering Husband to provide health and dental insurance for the parties' children. We agree. Wife correctly contends that the trial court stated in its opinion and order that "Husband's current [health insurance] premium of $50.00 will be used to calculate the monthly child support obligation." The court therefore erred when it did not direct husband to pay the children's health insurance.

### IV. Use and Possession

The *pendente lite* order granted use and possession of the family home and family use personal property to Wife for a period of not less than three years, starting from January 6, 1993. It also ordered that each party would pay one-half of

the mortgage payments, association dues, real property taxes, property insurance, and house repairs. Husband and Wife stipulated to continuing these provisions of the order. The trial court, however, neglected to include these provisions in its final opinion and order. Contrary to Wife's assertion, the provisions of the *pendente lite* order do not automatically remain effective because of their absence from the trial court's final order. On remand, the trial court should incorporate the stipulation into its order.

### V. Sale of Jointly Owned Realty and Personalty

From the parties' briefs, it is unclear what exactly each contests relative to the sale of the jointly owned personal and real property. Husband initially argued that the trial court erred in not ordering the sale of such property. Wife argued, in response, that it would have been error for the trial court to order the family home and family use property sold before the end of the use and possession period. In his reply brief, Husband proffered that he did not contend that the family home and family use personal property should have been sold during the use and possession period. Rather, Husband asserted that the trial court erred in not fixing a date upon which the use and possession period should end and in failing to order "the sale of the above-mentioned property subsequent thereto."

As indicated *supra*, in the *pendente lite* order the trial court granted use and possession of the family home and family use personal property to Wife "for a period of not less than three years beginning January 6, 1993." The parties agreed to abide by that provision of the *pendente lite* order which they anticipated the court would include in its final order. Clearly the termination of the use and possession period will be January 6, 1996, because under Md.Fam.Law Code Ann., § 8–210, the maximum period allowed for use and possession is three years.

We disagree with Husband's contention that the trial court erred in failing to order the sale of the jointly owned property

after the use and possession period expired. As we explained in *Pleasant v. Pleasant,* 97 Md.App. 711, 632 A.2d 202 (1993), "In the absence of evidence to the contrary, [Husband and Wife] are presumed to hold the [family home, and] household goods and furnishings as tenants by the entirety. Upon divorce, they then hold such property as tenants in common." *Id.* at 721, 632 A.2d 202. "[T]he trial judge *may*[,] . . . in the case of property owned by both [Husband and Wife], order that the property be sold and the proceeds divided equally." *Id.* at 720, 632 A.2d 202 (emphasis added); Md.Fam.Law Code Ann., § 8–202(b)(2) (1991). On remand, the trial court may, in its discretion, order the sale of the family home and family use personal property after the use and possession period expires on January 6, 1996. Otherwise, "[a]s tenants in common, either of the parties may petition for a sale of the [property] to recover his or her individual interest." *Ward v. Ward,* 52 Md.App. 336, 344, 449 A.2d 443 (1982).

### VI. *Attorney's Fees*

In her amended complaint and post-trial memorandum, Wife requested that the trial court order Husband to pay Wife's attorney's fees and litigation costs. Section 11–110(b) provides that "the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the [alimony] proceeding." Md.Fam.Law Code Ann., § 11–110(b) (Supp.1994). "Such reasonable and necessary expenses include counsel fees and costs." *Odunukwe v. Odunukwe,* 98 Md.App. 273, 287, 633 A.2d 418 (1993). Section 12–103 provides that "[t]he court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case . . . concerning the custody, support, or visitation of a child of the parties." *Id.* § 12–103(a)(1). Both alimony and child support were at issue in the case *sub judice.* Additionally, at the hearing, Wife argued that Husband should pay her attorney's fees and expenses and submitted a supporting statement of fees and costs.

The trial court never addressed Wife's request for fees and costs. Accordingly, we remand so the trial court may deter-

mine whether Wife is entitled to the attorney's fees she requested. The court shall articulate the basis for its decision. *Bagley v. Bagley,* 98 Md.App. 18, 41, 632 A.2d 229 (1993), *cert. denied,* 334 Md. 18, 637 A.2d 1191 (1994). The required statutory considerations before ordering any such payment are: (1) the financial status/resources of each party; (2) each party's needs; and (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding. *See* Md.Fam.Law Code Ann., §§ 11–110(c), 12–103(b) (Supp. 1994).

## CONCLUSION

Except for the trial court's rulings relative to indefinite alimony, work-related child care expenses, and the sale of jointly owned property, we vacate the trial court's order and remand so that it can properly redetermine the issues in accordance with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**