664 A.2d 453

**Pamela W. DOSER,**

v.

**John C. DOSER.**

**No. 2032, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 7, 1995.

---

330

Carren S. Oler and John W. Thyden (Thyden, Gross, Callahan & Oler, on the brief), Chevy Chase, for appellant.

Bruce L. Marcus (M. Celeste Bruce and Marcus & Bonsib on the brief), Greenbelt, for appellee.

Argued Before WENNER, FISCHER and HOLLANDER, JJ.

HOLLANDER, Judge.

Pamela Doser, appellant, filed a complaint for absolute divorce in the Circuit Court for Montgomery County on September 17, 1991, on grounds of desertion. Following a lengthy hearing before a Domestic Relations Master in November, 1992, Ms. Doser filed exceptions to the master's findings and recommendations, which the circuit court heard on June 3, 1993. At the close of the hearing, the court orally overruled all exceptions but one—the finding as to the value of certain marital property—and, as to the one exception, indicated that it would remand to the master to take further testimony. The court directed the parties to draft an order to that effect, but the parties could not agree on the content of the order.

More than a year later, on August 3, 1994, the court heard *de novo* testimony, limited to the grounds of divorce. That day, the court issued a written order granting divorce *nunc pro tunc* to the date on which the master filed his Findings and Recommendations. The court also overruled all of Ms. Doser's exceptions, including the one concerning the value of marital property. From that judgment, Ms. Doser now appeals.

Appellant presents six issues for our consideration, which we have re-ordered for clarity:

1. Did the trial court commit error in failing to issue findings of fact and conclusions of law?

2. Did the trial court commit error in failing to use its independent judgment on the issue of marital property valuation and alimony?

3. Did the trial court commit error in failing to permit evidence of the marital property's value as of the date of the divorce?

4. Did the trial court abuse its discretion in failing to remand to the master after stating on the record that it would be remanded for further presentation of evidence concerning the value of marital property?

5. Did the trial court abuse its discretion in failing to award an adequate amount of indefinite alimony?

6. Did the trial court commit error in failing to award [Ms. Doser] her full attorney's fees?

In light of *Domingues v. Johnson*, 323 Md. 486, 593 A.2d 1133 (1991) and its progeny, *Kirchner v. Caughey*, 326 Md. 567, 606 A.2d 257 (1992), *Bagley v. Bagley*, 98 Md.App. 18, 632 A.2d 229 (1993), and *Lemley v. Lemley*, 102 Md.App. 266, 649 A.2d 1119 (1994), we answer Questions 1 and 2 in the affirmative. Accordingly, we shall vacate the Chancellor's order and remand for such further proceedings as the court deems necessary in order to make more specific findings with respect to each exception. We also agree, with respect to Question 3, that the court erred in failing to value the marital property as of the date of the divorce. We shall address the remaining issues for the guidance of the trial court.[1] Md.Rule 8–131(a).

---

**1.** The factors underlying awards of alimony, monetary award, and counsel fees are so interrelated that, when a trial court considers a claim for any one of them, it must weigh the award of any other. Md.Code Ann., Fam.Law Art. §§ 8–205(b)(9, 10), 11–106(b)(11)(ii), and 11–110(c)(1) (1991 & Supp.1995); *see also, Strauss v. Strauss*, 101 Md.App. 490, 511, 647 A.2d 818 (1994), *cert. denied*, 337 Md. 90, 651 A.2d 855 (1995); *Rogers v. Rogers*, 80 Md.App. 575, 588–89, 565 A.2d

### *Factual Background*

The parties hotly contest many of the facts. Nevertheless, the following summary—gleaned from the testimony before the master and the Chancellor, as well as their decisions—appears largely undisputed.

The parties were married on December 17, 1966. They have three children: Christopher, born in 1967; Robin, born in 1969; and John, born in 1981. Beginning in the mid–1970s, Mr. Doser occasionally left the home for extended periods, sometimes without warning and without informing Ms. Doser of his whereabouts. The parties engaged in marital counselling, but whatever spawned the discord was not healed by it. Finally, in January, 1990, Mr. Doser left the home permanently, intending to end the marriage.

Mr. Doser, who was 52 years old when his wife filed for divorce, is a professional golfer. He owns a 52% interest in a limited partnership called the Montgomery Village Golf Club ("Montgomery Village"). He also owns a minority interest of 30% in the Lake Arbor Golf Club ("Lake Arbor"). There is no dispute that these two assets qualify as marital property. Although Mr. Doser's annual income is disputed, it ranges between $75,000 (using only his salary from Montgomery Village) and approximately $105,000 (per his personal tax returns). Following the marital separation, Mr. Doser lived, rent-free, in an abandoned farmhouse located on the proposed site of a project with which he was involved.

When Ms. Doser filed for divorce, she was a 47–year–old full-time homemaker and, during the marriage, she had no

361 (1989); *Holston v. Holston*, 58 Md.App. 308, 327, 473 A.2d 459, *cert. denied*, 300 Md. 484, 479 A.2d 372 (1984). Accordingly, when this Court vacates one such award, we often vacate the remaining awards for re-evaluation. *See, e.g., Alston v. Alston*, 331 Md. 496, 509, 629 A.2d 70 (1993) (remanding alimony issue upon reversal of monetary award); *Randolph v. Randolph*, 67 Md.App. 577, 589, 508 A.2d 996 (1986) (vacating counsel fees award upon reversal of monetary award); *Rosenberg v. Rosenberg*, 64 Md.App. 487, 531, 497 A.2d 485, *cert. denied*, 305 Md. 107, 501 A.2d 845 (1985) (vacating monetary award in light of reversal of counsel fees, and vacating alimony for reconsideration in light of new monetary award).

appreciable income. Moreover, she suffered from post-polio syndrome. Ms. Doser has weak muscles; she has pain in her shoulders and knees, and she cannot remain standing for long. In 1988, she began taking correspondence courses toward a bachelor's degree in psychology, which she earned in 1992. She planned to earn a masters degree and become a qualified counselor sometime in 1995.

Originally, the case was scheduled for a hearing before a master on June 22, 1992. At the hearing, however, appellant requested a continuance in order to retain an expert to value appellee's ownership interests in the two country clubs; she asserted that she had not yet done so due to a lack of funds. The master granted the continuance, ordered appellee to put adequate funds in an escrow account to pay for the valuation, and postponed the hearing until November, 1992. Thereafter, J. Hunter Pugh, Jr., the appraiser hired by appellant, estimated in his report that, among other assets, Mr. Doser's interest in Montgomery Village was worth over $2 million. As Mr. Pugh anticipated being unable to attend the hearing before the master, the parties prepared a *de bene esse* deposition.

During the deposition, Mr. Pugh explained the basis for his valuations. In particular, he specified the formulas that he used and the assumptions he had made. On cross-examination, to the surprise of appellant, Mr. Pugh acknowledged that he had grossly misread the tax returns of Montgomery Village, and that as a result, he could no longer stand by his original estimate of value. Mr. Pugh never performed any further analysis and was not paid.

On November 23 and 24, 1992, the master held an evidentiary hearing. When Ms. Doser did not offer Mr. Pugh's *de bene esse* deposition, Mr. Doser did so, accompanied by an exhibit, prepared by counsel, in which the "correct" numbers (taken from the tax returns) were substituted into the formulas discussed by Mr. Pugh in the deposition. Over appellant's objection, the master accepted the combined deposition and exhibit. Ms. Doser sought to call another expert, but because the expert had been retained only recently, the testimony was

excluded. Consequently, no other expert testimony was presented with respect to the value of the Montgomery Village asset.

In addition, the master heard testimony from Josephine Bloom, the comptroller of Montgomery Village. Bloom averred that the partnership had some $1,587,000 of long-term liabilities, of which $722,000 were assumed as part of a large modernization effort in 1991. The financial statements of Montgomery Village for 1991 and 1992 were introduced. Mr. Doser, as a lay witness, testified that he believed that his share of Montgomery Village was worth only $850,000, primarily due to other outstanding debts. Ms. Doser testified that Mr. Doser, in 1990, said he estimated the value of the total assets of Montgomery Village at $4 million, and thus his interest at over $2 million.

The master filed his Findings and Recommendations on February 3, 1993. In it, he found that the value of Mr. Doser's interest in Montgomery Village was $832,000, which he rounded to $850,000.[2] He found that Mr. Doser's annual income was $76,204 and Ms. Doser's income was zero. The master recommended a monetary award of $433,000. With respect to alimony, the master found that Mr. Doser was going increasingly into debt supporting two households. Accordingly, the master suggested that, until the home was sold and the proceeds divided, Mr. Doser should pay $3,000 in monthly alimony, of which $2,750 would be allocated to pay the two outstanding mortgages on the marital home, and that the alimony should terminate altogether upon sale of the marital home. In effect, the master's recommendation would have provided Ms. Doser with $250 per month in alimony pending sale of the home, plus payment of the mortgages. The master also recommended an award of $10,000 in attorney's fees, specifically finding that the amount was fair under the circumstances and that Mr. Doser had the ability to pay it.

---

2. The master made specific findings of title and value with respect to other items of marital property. With the exception of the Montgomery Village asset, there is no significant dispute over these findings.

Ms. Doser noted several exceptions to the master's findings and recommendations. She requested a remand to the master for further testimony or, in the alternative, for a *de novo* hearing on all issues. Although her exceptions do not directly correspond to any particular numbered factual finding, we glean from her argument in the Exceptions that Ms. Doser challenged, *inter alia,* the following findings and recommendations:

1. the finding that Mr. Doser's salary was only $76,000;
2. the finding with respect to the value of the Montgomery Village asset, based on the following errors:
 a. the master's erroneous reliance on the exhibit prepared by Mr. Doser's counsel purporting to correct the computational errors in Mr. Pugh's appraisal;
 b. absent the exhibit prepared by Mr. Doser's counsel, there is no evidence concerning the value of the Montgomery Village asset;
 c. the master's erroneous failure to account for an abnormal decrease in the Montgomery Village cash flow caused by lengthy upgrades in 1991; and
 d. the master's erroneous treatment of the debts of Montgomery Village as marital debt, and his concomitant use of the full amount of those debts to reduce the value of Mr. Doser's ownership portion;
3. the recommendation against awarding indefinite alimony;
4. the recommendation of awarding rehabilitative alimony of only $250 per month; and
5. the recommendation of awarding only $10,000 attorney's fees, rather than the $18,000 her counsel had billed her.

On June 3, 1993, at the hearing on the exceptions, Ms. Doser argued that the flaw in Mr. Pugh's analysis justified reopening testimony with respect to all property issues. The court apparently agreed with Ms. Doser that the master's finding with respect to the value of the Montgomery Village asset was flawed, because it indicated that it intended to refer the case back to the master to take further testimony with

respect to the asset.[3] The court did not, however, specify the particular ground upon which it relied in reaching its conclusion. Moreover, the Chancellor indicated that further testimony should be restricted to the value of Mr. Doser's interest in Montgomery Village. As we have noted, at the close of the hearing, the Chancellor directed the parties to draft an order for the court's signature reflecting its decision.

When the parties returned to court on July 8, 1994, still unable, after thirteen months, to agree on the language of the order, there was some confusion as to the purpose of the hearing. Mr. Doser, uncertain whether testimony was to be taken, subpoenaed Ms. Doser so that there would be no excuse for continuing the proceedings on the grounds that not all parties were present. On the other hand, Ms. Doser anticipated that the court would grant a divorce but did not expect that the court would take testimony or decide any other issues. Based on the court's earlier comments, she expected the court to remand to the master for further proceedings, and so she filed a motion objecting to any bifurcation of the

---

**3.** The following colloquy between the court and counsel for Mr. Doser on June 3, 1993 is indicative of the court's views:

> THE COURT: All right. Mr. Marcus, I think procedurally, at the very least, it is a travesty, but I think the only way that justice can be done in this case is to refer it back to the Master. I am going to refer it back to the Master.
> MR. MARCUS: If I can just be heard. ·
> 　　　*　　*　　*　　*　　*　　*
> THE COURT: I don't disagree with almost anything you said.
> MR. MARCUS: We spent almost $10,000 chasing a witness who was identified and then they didn't go with.
> THE COURT: I know.
> MR. MARCUS: And then to suggest that just simply to remand is just simply—I mean, with all due respect.
> 　　　*　　*　　*　　*　　*　　*
> [T]o come in a year and a half later, there is absolutely no reason for it.
> THE COURT: I understand that, and I think it is a travesty.
> MR. MARCUS: ... At least we ought to be reimbursed for our fees.
> 　　　*　　*　　*　　*　　*　　*
> THE COURT: All right. I will set this down for a hearing to reimburse your client for fees as a result of this.
> 　　　*　　*　　*　　*　　*　　*
> But it will be referred back to the Master.

proceedings. But the Chancellor apparently believed that, on June 3, 1993, everyone had agreed that any testimony would be taken by the Chancellor himself, and that the case would not be remanded. Thus, the court concluded the hearing and called counsel into chambers. What was said there is not in the record.

On August 3, 1993, the trial court heard testimony concerning only the grounds for divorce. At the close of the hearing, the Chancellor said, in pertinent part, as follows:

Okay. The Court does find that testimony [adduced] this morning between the parties and the corroborating witness satisfies the legal requirements for a divorce as prayed. The Court will grant the divorce, and before I sign any order, I will take under advisement the issue of whether it should be referred back to the Domestic Relations Master or not.

The hearing ended without further testimony or significant discussion. Following the hearing, the court issued a written Order that provided, in pertinent part, as follows:

Upon Consideration of the Report and Recommendations of the Domestic Relations Master ..., the Plaintiff's Exceptions ..., the Defendant's Response ..., the Transcript of the Proceedings convened before the Master ... on November 23, 1992 and November 24, 1992, [and] the arguments of counsel at the hearing on the Plaintiff's Exceptions before this Court, it is this 3rd day of August, 1994 by the Circuit Court for Montgomery County, Maryland,

ORDERED, *that Proposed Recommendations and Findings and Recommendations of the Domestic Relations Master are, and the same are hereby adopted, ratified, affirmed and accepted by this Court,* as of the date of its filing, to wit: February 3, 1993, subject to the following; and it is further

ORDERED that *the Plaintiff's Exceptions to the Report and Recommendations of the Domestic Relations Master are overruled and denied,* subject to the following; and it is further

ORDERED, that *Master's Proposed Judgment of Absolute Divorce is hereby adopted, ratified, affirmed and accepted by this Court as of the date of its filing, to wit: February 3, 1993,* as more fully set forth herein, and it is further

ORDERED, that based on the hearing before the Domestic Relations Master ... it is hereby

ADJUDGED, that *the Plaintiff, PAMELA W. DOSER, be and she is hereby granted an absolute divorce from the Defendant, JOHN C. DOSER, nunc pro tunc, upon receipt of testimony to obviate any staleness;* and it is further

\* \* \* \* \* \*

ORDERED, that the Defendant shall pay to the Plaintiff the sum of $3,000 per month as alimony, effective February 1, 1993, until such time as the marital home ... is sold and transferred as ordered elsewhere herein, with the Defendant able to satisfy $2,750.00 of this alimony obligation by making timely monthly payments of the two mortgages on the marital home and the remaining portion of the monthly alimony obligation to be paid to the Plaintiff ... and it is further

\* \* \* \* \* \*

ORDERED, that a monetary award is hereby granted to the Plaintiff, payable by the Defendant, in the amount of $433,000.00, including the value for Montgomery Village Golf Club, with any adjustment to be made according to Order of Court ... and it is further,

ORDERED, that the Defendant shall pay to the Plaintiff the sum of $10,000.00 as his share of her attorney's fees and costs. This amount shall be paid out of the Defendant's share of the sale proceeds of the marital home, if not previously paid; and it is further

ORDERED, that the marital home and the jointly-owned personal property therein shall be immediately listed for sale, with the net proceeds to be distributed equally between the parties, subject to other provisions in this Judgment of Absolute Divorce....

(Underline in original, italics added). Neither the Chancellor's oral comments (to the extent they constitute his opinion) nor his Order of August 3, 1993, otherwise addresses the substance of any of appellant's exceptions.

## *Discussion*

### I. Findings Of Fact And Independent Judgment

Appellant challenges the trial court's failure to address with specificity appellant's exceptions to the master's findings of fact, including the value of the marital property. As a consequence, she argues, by adopting the master's recommendations *in toto,* the Chancellor failed to exercise his independent judgment with respect to the issues underlying the monetary award, alimony, and attorney's fees.

A master's findings of fact are merely tentative and do not bind the parties until approved by the court. *Lemley,* 102 Md.App. at 278, 649 A.2d 1119 (citing *Wenger v. Wenger,* 42 Md.App. 596, 603, 402 A.2d 94, *cert. granted,* 286 Md. 755 (1979), *appeal dismissed per stipulation,* January 1, 1980). In reviewing exceptions to a master's findings of fact, the chancellor *must* address each exception and explain, with specific references to the record, how and why the chancellor resolves a given exception. *Domingues v. Johnson,* 323 Md. 486, 496–97, 593 A.2d 1133 (1991); *Lemley v. Lemley,* 102 Md.App. at 278–79, 649 A.2d 1119. *See also Kirchner,* 326 Md. at 572–73, 606 A.2d 257 (chancellor must also address the grounds upon which the ultimate conclusions rest). Even when the chancellor has overruled the exceptions, the chancellor is not excused from the duty to explain. *Lemley,* 102 Md.App. at 279, 649 A.2d 1119. This is true because, upon due consideration of the master's recommendations, the court may use the master's facts to support what *it* concludes in its independent judgment is the optimal resolution. *Bagley,* 98 Md.App. at 31–32, 632 A.2d 229. "A given set of facts does not lead mechanically to a single, automatic disposition but may support a range of discretionary dispositions." *Wenger,* 42 Md.App. at 602, 402 A.2d 94. As a consequence, the chancellor's decision ordinari-

ly will not be overturned on appeal. *Bagley,* 98 Md.App. at 31–32, 632 A.2d 229.

In *Bagley,* we summarized the proper interaction between a master and chancellor in an exceptions hearing. We said:

As a general rule, a master's findings of fact are given deference under the clearly erroneous rule. Where a party argues that facts found by the master have no foundation in the record, however, deference under the clearly erroneous rule recedes. *The chancellor must carefully consider the allegations and decide each such question.* "The chancellor should, in an oral or written opinion, state how he resolved those challenges. Having determined which facts are properly before him, and utilizing accepted principles of law, *the chancellor must exercise independent judgment to determine the proper result."*

\* \* \*

The Court was cognizant of the "substantial" burden carried by the chancellor. In this vein, the Court stated:

The necessity that the chancellor rule on challenges to findings of fact which may involve testimony spread throughout hundreds of pages of transcript, the difficulty of making a decision as to the best interest of a child without personally observing the witnesses, and the critical nature of the decision that must be made, as well as the wide discretion that is necessarily afforded that decision by the appellate courts, all speak to the care and attention that must be given the case by a chancellor.

*Domingues,* 323 Md. at 497, 593 A.2d 1133.

98 Md.App. at 30, 632 A.2d 229 (other citations to *Domingues* omitted; emphasis ours).

■ To assist the chancellor, the litigants must provide specific citations to the record; the court need not comb the record for evidence supporting or refuting a finding. *Domingues,* 323 Md. at 496, 593 A.2d 1133; *Lemley,* 102 Md.App. at 279 n. 2, 649 A.2d 1119; *Bagley,* 98 Md.App. at 31, 632 A.2d 229. This rule applies even when the proponent of the exception is arguing that the record is devoid of any evidence. *Domingues,* 323 Md. at 496, 593 A.2d 1133. When a party

fails to cite to the record, however, the chancellor must still address each exception. *Bagley,* 98 Md.App. at 31, 632 A.2d 229. "At a minimum, [the chancellor is] required to summarize briefly the evidence in the record that supports each challenged fact." *Lemley,* 102 Md.App. at 279, 649 A.2d 1119 (footnote omitted).

■ In the instant case, the record does not reflect that the trial judge complied with *Domingues* and its progeny by evaluating the evidence adduced before the master. The Order merely states that the "Plaintiff's Exceptions to the Report and Recommendations of the Domestic Relations Master are overruled and denied." Similarly, apart from the issue of concerning Montgomery Village, the Chancellor's oral comments, to the extent they constitute his opinion, do not address the exceptions which had been noted. Without a clear determination of the factual disputes, the Chancellor's adoption of the master's recommendation cannot be considered a proper exercise of independent judgment. Thus, the court failed to comply with the clear dictates of *Domingues, Kirchner, Bagley,* and *Lemley.* Therefore, as in each of those cases, this case must be remanded for further consideration so that the Chancellor may address specifically each exception to the Master's findings of fact.

## II. The Date Of The Divorce Decree

■ Appellant complains that the trial court erroneously valued the marital property as of the date of the master's findings, which preceded, by almost two years, the date on which the court resolved appellant's exceptions. The Chancellor, in his order, indicated that he was granting the divorce *nunc pro tunc* "to obviate any staleness." Ms. Doser argues that the court's refusal to permit updated evidence as to current value and granting the divorce *nunc pro tunc* constituted reversible error.

The power to grant an absolute divorce is vested solely in the circuit court pursuant to Md.Code Ann., Fam.Law Art.

("FL") § 7–103 (1991 & Supp.1995). This section, primarily concerned with the *grounds* upon which the court may grant absolute divorce, does not expressly limit the power to grant a divorce *nunc pro tunc.* Nevertheless, we are of the view that, under the circumstances, the Chancellor's entry of divorce *nunc pro tunc* was inappropriate.

In *Prince George's Co. v. Commonwealth Land Title Ins. Co.,* 47 Md.App. 380, 423 A.2d 270 (1981), we said:

Black's Law Dictionary (5th ed. 1979) at page 964 defines the term *"nunc pro tunc"* as follows:

Lat. Now for then. A phrase applied to acts allowed to be done after the time they should be done, with a retroactive effect, *i.e.,* with the same effect as if regularly done. Nunc pro tunc entry is an entry made now of something actually previously done to have effect of former date; office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake.

Nunc pro tunc merely describes inherent power of court to make its records speak the truth, *i.e.,* to record that which is actually but is not recorded. . . .

The key phrase in the above-recited definition is "office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake."

Our research has revealed that a number of our sister jurisdictions have ruled that the purpose of a *nunc pro tunc* entry is to correct a clerical error or omission as opposed to a judicial error or omission. In *Bostwick v. Van Vleck,* 106 Wis. 387, 390, 82 N.W. 302, 303 (1900), the Wisconsin Supreme Court set out "[t]he test to be applied in determining whether an error in a judgment is of a judicial character, or a mere clerical mistake which may be corrected in the court where it was made at any time, saving intervening rights of third parties and with due regard to equitable considerations," as being

whether the error relates to something that the trial court erroneously omitted to pass upon or considered and passed upon erroneously, or a mere omission to preserve of record, correctly in all respects, the actual decision of the court, which in itself was free from error. If the difficulty is found to be of the latter character, it may be remedied as a mere clerical mistake, which will not have the effect to change the judgment pronounced in the slightest degree, but merely to correct the record evidence of such judgment.

*Id.,* at 385–86, 82 N.W. 302 (citations omitted from internal quotations). *See also generally* Annotation, *Divorce—Decree Nunc Pro Tunc,* 19 A.L.R.3d 648 (1968 & Supp.1994); 46 Am.Jur.2d *Judgments* §§ 196–230 (1969); 49 C.J.S. *Judgments* §§ 117–121 (1969); 60 C.J.S. *Motions & Orders* § 57 (1969).

█ It is clear from our discussion in *Commonwealth* that the function of the entry of an order or judgment *nunc pro tunc* is to make the record reflect an action actually and properly taken but improperly recorded due to clerical error, not to correct a judicial error or to adjust for a failure to have a matter resolved in a timely fashion. In the instant case, because the power to grant absolute divorce is vested solely in the circuit court, the master's recommendation that divorce be granted cannot be treated as an actual *order* of divorce that simply had not been entered due to error. And, because the Chancellor had not yet passed on the merits, there was no order from the circuit court prior to the exception hearing. Thereafter, at the hearings on June 3, 1993 and July 8, 1994, the Chancellor did not purport to grant the divorce. Consequently, there was nothing erroneous in the record, clerical or judicial, for the Chancellor to correct by entering the divorce decree *nunc pro tunc.* If the court could not impose a *nunc pro tunc* decree in order to grant the divorce retroactively, then, as we explain below, the court could not rely on the property values found by the master in his Findings and Recommendations.

### III. Valuation Of Marital Property

The law is settled that, in a proceeding for absolute divorce, the value of marital property must be decided as of the date on which divorce is actually entered. *Fox v. Fox*, 85 Md.App. 448, 460–61, 584 A.2d 128 (1991); *Rosenberg v. Rosenberg*, 64 Md.App. 487, 507–08, 497 A.2d 485 (1985); *Wilen v. Wilen*, 61 Md.App. 337, 345–46, 486 A.2d 775 (1985); *Dobbyn v. Dobbyn*, 57 Md.App. 662, 674–75, 471 A.2d 1068 (1984). As we have noted, the court below relied on evidence of value obtained almost two years before the divorce merits hearing. Apparently, the court attempted to avoid the issue of staleness by entering the decree of divorce *nunc pro tunc*. But that decree was, as we have said, erroneous.

Appellant strenuously complains that the master, in finding the value of the Montgomery Village asset, improperly relied on the *de bene esse* deposition and the supplemental exhibit prepared by appellee's counsel. We need not decide this issue because, as we shall explain, the court will have to take fresh testimony as to value. Consequently, the issue as to the *de bene esse* deposition and supplement will become moot.[4]

The evidence as to the value of Montgomery Village, including the controversial *de bene esse* deposition and supplemental exhibit, is now about four years old. Given the size of the asset and the staleness of the evidence, the trial court, on remand, probably will not be able to rely on the earlier evidence in determining the value of the asset. *Compare Rosenberg*, 64 Md.App. at 507–08, 497 A.2d 485 (reliance on testimony concerning pension value, taken one month prior to issuance of divorce decree, was not error) *with Dobbyn*, 57 Md.App. at 674–78, 471 A.2d 1068 (reliance on valuation

---

4. Even if we were to consider this issue, Ms. Doser probably would not prevail. This is because the master apparently did not rely on the controversial evidence in reaching his conclusion. In his Findings and Recommendations, he expressly stated that he relied on Mr. Doser's testimony of the value of the Montgomery Village asset. Indeed, the master commented that his finding of value was *greater* than it would have been had he used Mr. Pugh's testimony and the supplemental exhibit.

testimony concerning stocks, taken thirteen months before decree was issued, held to be error); *see also Fox,* 85 Md.App. at 461, 584 A.2d 128 (given that court found evidence of value to be stale, court erred by neither allowing further depositions to be taken nor reserving disposition for a period of time).

## IV. The Monetary Award

Appellant does not directly challenge the monetary award. She does, however, generally challenge the court's failure to exercise independent judgment. On this point, we note that neither the master nor the Chancellor discussed the factors specified in FL § 8–205(b), although the master did say he considered them. Ms. Doser also claims that the court abused its discretion in its awards of alimony and attorney's fees, which are inextricably linked to the monetary award.[5] Given that the monetary award hinges on the value of marital property and that the Chancellor, on remand, must redetermine those values, we shall discuss the relevant facts and the law as to monetary awards, for the court's guidance.

 The purpose of the monetary award is to correct any inequity created by the way in which property acquired during marriage happened to be titled. The words of this Court in *Ward v. Ward,* 52 Md.App. 336, 449 A.2d 443 (1982) explain this principle:

> The monetary award is thus an addition to and not a substitution for a legal division of the property accumulated during marriage, according to title. It is intended to compensate a spouse who holds title to less than an equitable portion of that property.... What triggers operation of the statute is the claim that a *division* of the parties' property according to its title would create an inequity which would be overcome through a monetary award.

*Id.,* at 339, 449 A.2d 443 (emphasis in original).

 When a party petitions for a monetary award, the trial court must follow a three-step procedure. First, for each

---

5. *See* note 1, *supra.*

disputed item of property, the court must determine whether it is marital or nonmarital. FL § 8–203. Second, the court must determine the value of all marital property. FL § 8–204. Third, the court must determine if the division of marital property according to title will be unfair; if so, the court may make an award to rectify the inequity. *Dobbyn v. Dobbyn*, 57 Md.App. 662, 679, 471 A.2d 1068 (1984). Such an award is purely discretionary. *Grant v. Zich*, 53 Md.App. 610, 614, 456 A.2d 75 (1983), *aff'd*, 300 Md. 256, 477 A.2d 1163 (1984).

In balancing the equities, the court must consider the factors set forth in FL § 8–205(b): [6]

(1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the award is made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both;

(9) any award of alimony ...; and

(10) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in

---

6. This section was modified by 1994 Md.Laws ch. 462. As the modifications expressly do not apply to actions filed before October 1, 1994, they are not relevant to the instant case.

the pension, retirement, profit sharing, or deferred compensation plan, or both.

 While consideration of the factors is mandatory, *Holston*, 58 Md.App. at 318–19, 473 A.2d 459, the trial court need not "go through a detailed check list of the statutory factors, specifically referring to each, however beneficial such a procedure might be … for purposes of appellate review." *Grant*, 53 Md.App. at 618, 456 A.2d 75. If the court determines that the division of marital property based on title would be unfair, the court has several options. It may order a party to pay a fixed sum of cash and immediately reduce that order to judgment; FL § 8–205(c); it may establish a schedule for future payments of all or part of the award; *Ross v. Ross*, 90 Md.App. 176, 188–89, 600 A.2d 891, *vac. on other grounds*, 327 Md. 101, 607 A.2d 933 (1992); it may transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan from one party to the other; FL § 8–205(a).

 On remand, the Chancellor must satisfy *Domingues* and its progeny. In doing so, the court should examine the factors specified in FL § 8–205. The Chancellor must also reconsider the amount of the monetary award in light of any new evidence concerning the value of the Montgomery Village asset and any modification to the awards of alimony and attorney's fees.

## V. Alimony

### A. Alimony In General

 The award of alimony is governed by FL Title 11. It is well established that the purpose of the alimony statute is to provide trial courts with the ability to ensure "an appropriate degree of spousal support … after the dissolution of a marriage." *Tracey v. Tracey*, 328 Md. 380, 388, 614 A.2d 590 (1992). If the court deems alimony appropriate, it may award it retroactively under FL § 11–106(a)(2) ("The court may award alimony for a period beginning from the filing of the pleading that requests alimony."). An appellate court will not

disturb an alimony award unless the trial court has arbitrarily exercised its discretion or its judgment was otherwise wrong. *Id.* at 385, 614 A.2d 590.

Fixed-term, "rehabilitative" alimony is clearly preferred to indefinite alimony. *Tracey,* 328 Md. at 391, 614 A.2d 590; *Turrisi v. Sanzaro,* 308 Md. 515, 524–25, 520 A.2d 1080 (1987); *Bricker v. Bricker,* 78 Md.App. 570, 573–74, 554 A.2d 444 (1989); *Rosenberg,* 64 Md.App. at 531, 497 A.2d 485. In *Tracey,* the Court of Appeals said:

> [T]he purpose of alimony is not to provide a lifetime pension, but where practicable to ease the transition for the parties from the joint married state to their new status as single people living apart and independently. Expressed otherwise, alimony's purpose is "to provide an opportunity for the recipient spouse to become self-supporting." The concept of alimony as life-long support enabling the dependent spouse to maintain an accustomed standard of living has largely been superseded by the view that the dependent spouse should be required to become self-supporting, even though that might result in a reduced standard of living.

*Id.,* at 391, 614 A.2d 590 (citations omitted). *See also, Rock v. Rock,* 86 Md.App. 598, 608, 587 A.2d 1133 (1991); *Blake v. Blake,* 81 Md.App. 712, 727, 569 A.2d 724 (1990); *Rogers v. Rogers,* 80 Md.App. 575, 591, 565 A.2d 361 (1989); *Thomasian v. Thomasian,* 79 Md.App. 188, 194–95, 556 A.2d 675 (1989); *Campolattaro v. Campolattaro,* 66 Md.App. 68, 75, 502 A.2d 1068 (1986); *Holston v. Holston,* 58 Md.App. 308, 321, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984). Moreover, if the court is satisfied that, based on the evidence, rehabilitative alimony would provide a useful incentive to a party, the court may structure the alimony to include *both* rehabilitative and indefinite components. *See Coviello v. Coviello,* 91 Md.App. 638, 642–53, 605 A.2d 661 (1992).

Nevertheless, the Legislature and the courts have recognized that rehabilitative alimony may not always be appropriate. Section 11–106(c) authorizes trial courts to award indefinite alimony if either (a) due to age, illness,

infirmity, or disability, the dependent spouse cannot reasonably be expected to become self-supporting, or (b) the difference in lifestyle between the parties will remain "unconscionably disparate," even if both spouses become fully self-supporting. The party seeking such alimony, however, bears the burden of proving the statutory requirements. *Thomasian,* 79 Md.App. at 195, 556 A.2d 675.[7]

In the instant case, as we have noted, the court did not comply with the *Domingues* requirement in resolving appellant's exceptions as to alimony. Further, the court's comments do not reveal whether the court considered all the factors, specified in FL § 11–106(c), concerning the appropriateness of awarding indefinite alimony rather than rehabilitative alimony. Nor do we know why the court rejected the request for indefinite alimony. We are thus unable to express any opinion as to whether the refusal *vel non* to award indefinite alimony was an abuse of discretion. To assist the court on remand, we shall review some of the pertinent facts adduced by the evidence as well as the applicable law.

Ms. Doser was fifty years old at the time of the last hearing before the circuit court. Also, she suffers from post-polio syndrome, which limits her mobility and endurance. On the other hand, although she had not held a job—either full-time or part-time—since the marriage, she had already earned her bachelors degree, was working toward a masters degree, and was training to become a professional counselor. She also testified that she anticipated being able to work for her church upon completion of her training. The master was apparently unimpressed with Ms. Doser's failure to earn money, notwithstanding her time commitments as student and homemaker, and he suggested that Ms. Doser find ways to reduce her expenses. But neither the master nor the court made any attempt to calculate what her future expenses or income would

---

7. We recognize that expert testimony, while helpful, is not generally necessary to demonstrate that a party either will or will not become self-sufficient. *Bricker v. Bricker,* 78 Md.App. 570, 575–76, 554 A.2d 444 (1989).

be. Such a calculation is obviously an important component of any finding of self-sufficiency.

We turn to whether the parties' obvious disparity in income would justify indefinite alimony. "The underlying purpose of alimony is not designed to create a subsistence level for the more dependant spouse; rather, the court is required to consider numerous factors, *including the lifestyle to which he or she had become accustomed.*" *Strauss*, 101 Md.App. at 512, 647 A.2d 818 (emphasis added).

Assuming Ms. Doser ultimately will become self-sufficient, she will enter the labor pool for the first time at over fifty years of age, with physical limitations. Therefore, the court should consider the extent to which she will earn income comparable with Mr. Doser's salary. We recognize that the Court of Appeals has declined to adopt "a hard and fast rule regarding any disparity" in income for purposes of awarding indefinite alimony. *Tracey*, 328 Md. at 393, 614 A.2d 590. Nevertheless, gross disparities in income levels frequently have been found unconscionable, and have supported the award of indefinite alimony. *See, e.g., Tracey*, 328 Md. at 393, 614 A.2d 590 (gross disparity found where wife's income was 28% of husband's); *Blaine v. Blaine*, 97 Md.App. 689, 708, 632 A.2d 191 (1993), *aff'd*, 336 Md. 49, 646 A.2d 413 (1994) (same, with 23%); *Rock*, 86 Md.App. at 609–11, 587 A.2d 1133 (same, with 20–30%); *Broseus v. Broseus*, 82 Md.App. 183, 196, 570 A.2d 874 (1990) (same, with 35%); *Bricker*, 78 Md.App. at 577, 554 A.2d 444 (same, with 35%); *Benkin v. Benkin*, 71 Md.App. 191, 199, 524 A.2d 789 (1987) (same, with 16%); *Rogers*, 80 Md.App. at 592, 565 A.2d 361 (same, with 15%); *Zorich v. Zorich*, 63 Md.App. 710, 717, 493 A.2d 1096 (1985) (same, with 20%); *Holston*, 58 Md.App. at 322–23, 473 A.2d 459 (same, with 15%); *Kennedy v. Kennedy*, 55 Md.App. 299, 307, 462 A.2d 1208 (1983) (same, with 34%). *See also, Strauss v. Strauss*, 101 Md.App. 490, 512, 647 A.2d 818 (1994) (court abused its discretion in only basing the award of indefinite alimony on wife's "expressed needs and her ability to meet those needs" without considering the parties' respective life-

styles); *Melrod v. Melrod,* 83 Md.App. 180, 195–97, 574 A.2d 1, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990) (despite short marriage, the disparity in income was so great that award of indefinite alimony not an abuse); *Wassif v. Wassif,* 77 Md. App. 750, 755, 551 A.2d 935, *cert. denied,* 315 Md. 692, 556 A.2d 674 (1989). *But see, Green v. Green,* 64 Md.App. 122, 494 A.2d 721 (1985) (given a large monetary award, disparity of 22% was not unconscionable).

Where circumstances have warranted, we have found an abuse of discretion for the *failure* to award indefinite alimony. *See, e.g., Rogers,* 80 Md.App. at 594, 565 A.2d 361; *Wassif,* 77 Md.App. at 758, 551 A.2d 935; *Holston,* 58 Md.App. at 324, 473 A.2d 459. In *Wassif,* for example, we found that a three-year award of rehabilitative alimony, in the monthly amount of $500, constituted an abuse of discretion. There, the husband was an anesthesiologist; the wife had a high school degree and had been an X-ray technician before the marriage, but her certification had lapsed. The marriage lasted about 17 years. While the wife had no significant income-generating assets, it was anticipated that she would receive a substantial sum if the parties were able to sell their beach condominiums. More-over, the wife was only 36 at the time of the divorce, was in fine health, and had worked as a bookkeeper for her husband. Nonetheless, we recognized that the parties would have an unconscionable disparity of income, and we held that the wife was entitled to indefinite alimony.

### B. Amount of Alimony

On remand, the court also will have to review the amount of alimony. FL § 11–106(b) sets forth the factors that the trial court *must* consider when making an award of alimony. They are:

(1) the ability of the party seeking alimony to be wholly or partially self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties; and

(11) the financial needs and financial resources of each party, including:

 i. all income and assets, including property that does not produce income;

 ii. any [marital] award made . . .;

 iii. the nature and amount of the financial obligations of each party; and

 iv. the right of each party to receive retirement benefits.

In considering these factors, the trial court need not use formulaic language or articulate every reason for its decision with respect to each factor. *Hollander v. Hollander*, 89 Md.App. 156, 176, 597 A.2d 1012 (1991); [8] *Campolattaro*, 66 Md.App. at 81, 502 A.2d 1068. Rather, the court must clearly indicate that it has considered all the factors. *Blake*, 81 Md.App. at 728, 569 A.2d 724. Where the trial court's review of the factors is not clear, this Court may look to the record as a whole to determine whether the trial court's findings were based on a review of the factors. *Rogers*, 80 Md.App. at 591, 565 A.2d 361 (citing *Newman v. Newman*, 71 Md.App. 670, 678, 527 A.2d 61 (1987)).

---

8. The Hollanders in the cited case are not related to Judge Hollander.

■ Again, a review of some of the evidence in the instant case highlights the conclusion that "[a] given set of facts does not lead mechanically to a single, automatic disposition but may support a range of discretionary dispositions." *Wenger,* 42 Md.App. at 602, 402 A.2d 94. Here, the parties were married for a quarter century. Although the length of the marriage was an important consideration in *Melrod,* the trial court here seems not to have placed any particular weight on the length of the parties' marriage. Further, the parties are in their fifties and, apparently, neither one is in good health. The parties do not dispute that Mr. Doser sought to terminate the marriage on his own. As noted above, it is unclear whether, and if so the degree to which, Ms. Doser will be able to become self-supporting. While there is little evidence concerning the family's standard of living, there is evidence that the family always had financial struggles. In addition, Mr. Doser had amassed considerable personal debt and income tax liabilities following the separation. This evidence does not inexorably lead to a single resolution. Consequently, in setting an amount of alimony, the court should specify which factors it has weighed most heavily, and the evidence in the record upon which it relied.

## VI. *De Novo* Testimony

■ In her argument concerning Question 4, and parts of her argument regarding Questions 1, 2, and 3, Ms. Doser contests the court's refusal to remand to the master for a complete revaluation of all marital property. Appellant argues that the court was bound as a matter of law either to conduct a *de novo* hearing on all issues or else remand. She also argues that, once the Chancellor indicated he intended to remand as to the value of Montgomery Village, his subsequent failure to do so was an abuse of discretion. We disagree.

Maryland Rule 2–541(i) governs the procedure when, at a hearing on exceptions, the question of whether to accept further evidence arises. This Rule gives the trial court broad discretion to decide whether to hear additional testimony in deciding exceptions. *Lemley,* 102 Md.App. at 287, 649 A.2d

1119; *Best v. Best,* 93 Md.App. 644, 649–50, 613 A.2d 1043 (1992); *cf.* Md.Rule 2–535 (motion to exercise revisory power). It states, in pertinent part, as follows:

The court may decide exceptions without a hearing, unless a hearing is requested.... The exceptions shall be decided on the evidence presented to the master unless: (1) the excepting party sets forth with particularity the additional evidence to be offered and the reasons why the evidence was not offered before the master, and (2) the court determines that the additional evidence should be considered. If additional evidence is to be considered, the court *may remand the matter to the master* to hear the additional evidence and to make appropriate findings or conclusions, *or the court may hear and consider the additional evidence or conduct a de novo hearing.*

(Emphasis added). Moreover, case law makes clear that the chancellor "may order *de novo* fact-finding in whole or in part." *Best,* 93 Md.App. at 651, 613 A.2d 1043 (underline added).

Appellant has presented no authority for the proposition that, once the court determines that further evidence is warranted, the court *must* either reopen every issue resolved before the master or remand for reconsideration of all issues. Indeed, such a limitation, by forcing unnecessary duplication, would undermine the value of referring matters to masters at all. *See Domingues,* 323 Md. at 497, 593 A.2d 1133 ("If a chancellor must essentially duplicate the effort and dedication of time of a master in order to ultimately decide a case, nothing has been gained by referral to the master."). Nor has she produced any authority supporting her argument that, once a court selects a course of action, it cannot thereafter change that course without abusing its discretion. In any event, here the Chancellor never ordered a remand; he only commented that he intended to do so. Absent an order, it is not apparent that the court actually changed its course at all.

In the instant case, Ms. Doser's Exceptions included a request for permission to present *de novo* evidence. The

Chancellor had three options—review the exceptions on the basis of the evidence already in the record, remand, or receive the *de novo* evidence directly. Ordinarily, this decision is within the discretion of the trial court. *Best*, 93 Md.App. at 649–50, 613 A.2d 1043. Absent a showing that the particular decision was an abuse of that discretion, we will not disturb it. Nonetheless, as we have already observed, because of the age of the evidence, the court may not be able to rely solely on stale economic evidence. *Dobbyn*, 57 Md.App. at 674–78, 471 A.2d 1068 (reliance on valuation testimony concerning stocks, taken thirteen months before decree was issued, held to be error).

## VII. Attorney's Fees

A party may request counsel fees under FL § 11–110. This section provides, in pertinent part:

> (b) *Authority of court.*—At any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.
>
> (c) *Required considerations.*—Before ordering the payment, the court shall consider:
>
> (1) the financial resources and financial needs of both parties; and
>
> (2) whether there was substantial justification for prosecuting or defending the proceeding.

*See also, Blake*, 81 Md.App. at 730, 569 A.2d 724. The award or denial of counsel fees is governed by the abuse of discretion standard. *Coviello*, 91 Md.App. at 658, 605 A.2d 661.

Given that the court granted alimony, it follows that Ms. Doser was justified in prosecuting her alimony claim. Moreover, "justification," for the purposes of FL § 11–110(c)(2), is not equivalent to "success;" even if Ms. Doser did not receive the alimony she requested, her loss would not preclude an award of counsel fees. *See, e.g., Strawhorn v. Strawhorn*, 49 Md.App. 649, 658–60, 435 A.2d 466 (1981) (although alimony award to wife was reversed as too high,

■■■■■■■■■■

award of counsel fees was not abuse of discretion). Indeed, even if some of the legal fees were partially due to frivolous litigation, such conduct does not preclude an award for the remainder. *Odunukwe v. Odunukwe,* 98 Md.App. 273, 287, 633 A.2d 418 (1993). The conduct of the party during litigation is, however, a factor to be considered. *Id.; see also* Md.Rule 1–341 (conduct in bad faith).

In this case, the court expressed dismay at the extraordinarily slow pace of the proceedings, calling the case a "travesty." Although it is not entirely clear, the Chancellor and the master apparently placed the bulk of the blame for this delay on Ms. Doser. Nevertheless, based on the master's recommendation, the court granted appellant the sum of $10,000 in attorney's fees, representing more than half of the fees she had requested.

■■■ In support of her claim of error, Ms. Doser argues that the full $18,000 she requested should have been awarded simply because she is the "economically dependent party." She has not provided any law that would *entitle* her to an award of the full amount based upon her dependency. Nor has she demonstrated that she was blameless in causing the extraordinary delays. Consequently, we do not discern any basis for concluding that the actual award constituted an abuse of discretion. On remand, however, the court may elect to reconsider this amount in light of our discussions of law with respect to the remaining issues.

**JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.**